MURRAY, DIRECTOR, VIRGINIA DEPARTMENT OF
CORRECTIONS *v.* CARRIER

No. 84–1554.   Argued January 21, 1986—Decided June 26, 1986

O'CONNOR, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, and REHNQUIST, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, in which BLACKMUN, J., joined, *post*, p. 497. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 516.

*Jerry P. Slonaker*, Senior Assistant Attorney General of Virginia, argued the cause for petitioner. With him on the briefs were *William G. Broaddus*, Attorney General, and *Donald R. Curry*, Assistant Attorney General.

*Deputy Solicitor General Frey* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Acting Solicitor General Fried, Assistant Attorney General Trott, Edwin S. Kneedler,* and *Kathleen A. Felton.*

*Sherman L. Cohn*, by appointment of the Court, 474 U. S. 898, argued the cause for respondent. With him on the brief was *Steven H. Goldblatt.**

---

*Briefs of *amici curiae* urging reversal were filed for the State of Idaho et al. by *James Thomas Jones*, Attorney General of Idaho, and *Lynn E. Thomas*, Solicitor General, *Charles A. Graddick*, Attorney General of Alabama, *Harold M. Brown*, Attorney General of Alaska, *Robert K. Corbin*, Attorney General of Arizona, *John Steven Clark*, Attorney General of Arkansas, *Duane Woodward*, Attorney General of Colorado, *John J. Kelley*, Chief State's Attorney of Connecticut, *Charles M. Oberly,*

Justice O'Connor delivered the opinion of the Court.

We granted certoriari in this case to consider whether a federal habeas petitioner can show cause for a procedural default by establishing that competent defense counsel inad-

Attorney General of Delaware, *Michael J. Bowers*, Attorney General of Georgia, *Richard Opper*, Attorney General of Guam, *Corinne K. A. Watanabe*, Attorney General of Hawaii, *Neil F. Hartigan*, Attorney General of Illinois, *Linley E. Pearson*, Attorney General of Indiana, *Robert T. Stephan*, Attorney General of Kansas, *David L. Armstrong*, Attorney General of Kentucky, *William J. Guste, Jr.*, Attorney General of Louisiana, *Stephen H. Sachs*, Attorney General of Maryland, *Francis X. Bellotti*, Attorney General of Massachusetts, *Frank J. Kelley*, Attorney General of Michigan, *Edwin L. Pittman*, Attorney General of Mississippi, *William L. Webster*, Attorney General of Missouri, *Mike Greely*, Attorney General of Montana, *Robert M. Spire*, Attorney General of Nebraska, *Brian McKay*, Attorney General of Nevada, *Stephen E. Merrill*, Attorney General of New Hampshire, *Irwin I. Kimmelman*, Attorney General of New Jersey, *Paul Bardacke*, Attorney General of New Mexico, *Lacy H. Thornburg*, Attorney General of North Carolina, *Nicholas Spaeth*, Attorney General of North Dakota, *Anthony J. Celebrezze, Jr.*, Attorney General of Ohio, *Michael Turpen*, Attorney General of Oklahoma, *LeRoy S. Zimmerman*, Attorney General of Pennsylvania, *Hector Rivera Cruz*, Attorney General of Puerto Rico, *Arlene Violet*, Attorney General of Rhode Island, *T. Travis Medlock*, Attorney General of South Carolina, *Mark V. Meierhenry*, Attorney General of South Dakota, *W. J. Michael Cody*, Attorney General of Tennessee, *Jim Mattox*, Attorney General of Texas, *David L. Wilkinson*, Attorney General of Utah, *Jeffrey Amestoy*, Attorney General of Vermont, *Victor D. Schneider*, Acting Attorney General of The Virgin Islands, *William G. Broaddus*, Attorney General of Virginia, *Kenneth O. Eikenberry*, Attorney General of Washington, *Charlie Brown*, Attorney General of West Virginia, *Bronson C. La Follette*, Attorney General of Wisconsin, and *Archie G. McClintock*, Attorney General of Wyoming; for the State of Florida by *Jim Smith*, Attorney General, and *Raymond L. Marky* and *Gregory G. Costas*, Assistant Attorneys General; and for the Legal Foundation of America et al. by *Susan Crump, David Crump*, and *James P. Manak*.

*Larry W. Yackle, Charles S. Sims*, and *Burt Neuborne* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

vertently failed to raise the substantive claim of error rather than deliberately withholding it for tactical reasons.

## I

Respondent Clifford Carrier was convicted of rape and abduction by a Virginia jury in 1977. Before trial, respondent's court-appointed counsel moved for discovery of the victim's statements to police describing "her assailants, the vehicle the assailants were driving, and the location of where the alleged rape took place." 2 Record 11. The presiding judge denied the motion by letter to counsel after examining the statements *in camera* and determining that they contained no exculpatory evidence. *Id.*, at 31. Respondent's counsel made a second motion to discover the victim's statements immediately prior to trial, which the trial judge denied for the same reason after conducting his own *in camera* examination. Tr. 151–152.

After respondent was convicted, his counsel filed a notice of appeal to the Virginia Supreme Court assigning seven errors, of which the fifth was:

> "Did the trial judge err by not permitting defendant's counsel to examine the written statements of the victim prior to trial, and during the course of the trial?" 2 Record 83.

Without consulting respondent, counsel subsequently submitted the required petition for appeal but failed to include this claim, notwithstanding that Virginia Supreme Court Rule 5:21 provides that "[o]nly errors assigned in the petition for appeal will be noticed by this Court and no error not so assigned will be admitted as a ground for reversal of a decision below." The Virginia Supreme Court refused the appeal and this Court denied certiorari. *Carrier* v. *Virginia*, 439 U. S. 1076 (1979).

A year later respondent, by this time proceeding *pro se*, filed a state habeas corpus petition claiming that he had been denied due process of law by the prosecution's withholding of the victim's statements. The State sought dismissal of his

petition on the ground that respondent was barred from presenting his due process discovery claim on collateral review because he failed to raise that claim on appeal. The state habeas court dismissed the petition "for the reasons stated in the Motion to Dismiss," 1 Record, Doc. No. 12, and the Virginia Supreme Court denied certiorari.

Respondent next filed a *pro se* habeas petition in the District Court for the Eastern District of Virginia, renewing his due process discovery claim as grounds for relief. The State filed a motion to dismiss asserting that respondent's failure to raise the issue on direct appeal was a procedural default barring federal habeas review under *Wainwright* v. *Sykes*, 433 U. S. 72 (1977), and that respondent had not exhausted his state remedies because he could bring an ineffective assistance of counsel claim in the state courts to establish that his procedural default should be excused. 1 Record, Doc. No. 3. The United States Magistrate to whom the case was referred recommended dismissal by virtue of the procedural default and also ruled that respondent had not exhausted his state remedies. In reply to the Magistrate's report, respondent alleged that his procedural default was "due to ineffective assistance of counsel during the filing of his appeal." App. 11. The District Court approved the Magistrate's report, holding the discovery claim barred by the procedural default and indicating that respondent should establish cause for that default in the state courts.

At oral argument on appeal to the Court of Appeals for the Fourth Circuit, respondent abandoned any claim of ineffective assistance of counsel but asserted that counsel had mistakenly omitted his discovery claim from the petition for appeal and that this error was cause for his default. A divided panel of the Court of Appeals reversed and remanded. *Carrier* v. *Hutto*, 724 F. 2d 396 (1983). The court construed respondent's objection to the denial of discovery as having rested throughout on a contention that *Brady* v. *Maryland*, 373 U. S. 83 (1963), requires the prosecution to disclose any evidence that might be material to guilt whether or not it is

exculpatory, and concluded that when respondent's counsel omitted this discovery claim from the petition for review "the issue was lost for purposes of direct and collateral review." 724 F. 2d, at 399. The court framed the issue before it as whether "a single act or omission by counsel, insufficient by itself to contravene the sixth amendment, [can] satisfy the 'cause' prong of the exception to preclusive procedural default discussed in *Wainwright?*" *Id.*, at 400. In answering this question, the court drew a dispositive distinction between procedural defaults resulting from deliberate tactical decisions and those resulting from ignorance or inadvertence. *Id.*, at 401. The court determined that only in the latter category does an attorney's error constitute cause because, whereas a tactical decision implies that counsel has, at worst, "reasonably but incorrectly exercise[d] her judgment," ignorance or oversight implies that counsel "fail[ed] to exercise it at all, in dereliction of the duty to represent her client." *Ibid.* Thus, in order to establish cause a federal habeas petitioner need only satisfy the district court "that the failure to object or to appeal his claim was the product of his attorney's ignorance or oversight, not a deliberate tactic." *Ibid.* Accordingly, the Court of Appeals remanded to the District Court:

> "[A]lthough the likelihood of attorney error appears very great in this case, we lack testimony from Carrier's counsel which might disclose a strategic reason for failing to appeal the *Brady* issue. The question of counsel's motivation is one of fact for the district court to resolve upon taking further evidence." *Id.*, at 402.

The court also ruled that the District Court erred in suggesting that respondent should establish cause for the default in the state courts. "The exhaustion requirement of 28 U. S. C. § 2254 pertains to independent claims for habeas relief, not to the proffer of *Wainwright* cause and prejudice." *Ibid.* Since respondent did not allege ineffective assistance

of counsel as an independent basis for habeas relief, the case presented no exhaustion question.

The dissenting judge believed that the petition should have been dismissed for failure to exhaust state remedies because respondent had never presented his discovery claim as a denial of due process in the state courts, *id.*, at 403–404 (Hall, J., dissenting), and differed with the majority's interpretation of the cause standard because "[it] will ultimately allow the exception to swallow the rule." *Id.*, at 405. The State sought rehearing, and the en banc Court of Appeals adopted the panel majority's decision, with four judges dissenting. *Carrier* v. *Hutto*, 754 F. 2d 520 (1985). We now reverse and remand.

## II

*Wainwright* v. *Sykes* held that a federal habeas petitioner who has failed to comply with a State's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim. 433 U. S., at 87. See also *Francis* v. *Henderson*, 425 U. S. 536 (1976). In so holding, the Court explicitly rejected the standard described in *Fay* v. *Noia*, 372 U. S. 391 (1963), under which a federal habeas court could refuse to review a defaulted claim only if "an applicant ha[d] deliberately by-passed the orderly procedure of the state courts," *id.*, at 438, by personal waiver of the claim amounting to "'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.*, at 439 (quoting *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938)). See *Wainwright* v. *Sykes*, 433 U. S., at 87–88. At a minimum, then, *Wainwright* v. *Sykes* plainly implied that default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived that claim. See *id.*, at 91, n. 14; *Reed* v. *Ross*, 468 U. S. 1, 13 (1984). Beyond that, the Court left open "for

resolution in future decisions the precise definition of the 'cause'-and-'prejudice' standard." 433 U. S., at 87.

We revisited the cause and prejudice test in *Engle* v. *Isaac*, 456 U. S. 107 (1982). Like *Wainwright* v. *Sykes*, *Engle* involved claims that were procedurally defaulted at trial. In seeking to establish cause for their defaults, the prisoners argued that "they could not have known at the time of their trials" of the substantive basis for their constitutional claims, which were premised on *In re Winship*, 397 U. S. 358 (1970). *Engle,* 456 U. S., at 130. Without deciding "whether the novelty of a constitutional claim ever establishes cause for a failure to object," *id.*, at 131, we rejected this contention because we could not conclude that the legal basis for framing the prisoners' constitutional claims was unavailable at the time. *Id.*, at 133. In language that bears directly on the present case, we said:

> "We do not suggest that every astute counsel would have relied upon *Winship* to assert the unconstitutionality of a rule saddling criminal defendants with the burden of proving an affirmative defense. Every trial presents a myriad of possible claims. Counsel might have overlooked or chosen to omit respondents' due process argument while pursuing other avenues of defense. We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as a cause for a procedural default." *Id.*, at 133–134 (footnote omitted).

The thrust of this part of our decision in *Engle* is unmistakable: the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural de-

fault.   At least with respect to defaults that occur at trial, the Court of Appeals' holding that ignorant or inadvertent attorney error is cause for any resulting procedural default is plainly inconsistent with *Engle.*   It is no less inconsistent with the purposes served by the cause and prejudice standard.   That standard rests not only on the need to deter intentional defaults but on a judgment that the costs of federal habeas review "are particularly high when a trial default has barred a prisoner from obtaining adjudication of his constitutional claim in the state courts."   *Engle,* 456 U. S., at 128. Those costs, which include a reduction in the finality of litigation and the frustration of "both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights," *ibid.*, are heightened in several respects when a trial default occurs: the default deprives the trial court of an opportunity to correct any error without retrial, detracts from the importance of the trial itself, gives state appellate courts no chance to review trial errors, and "exacts an extra charge by undercutting the State's ability to enforce its procedural rules."   *Id.*, at 129.   Clearly, these considerable costs do not disappear when the default stems from counsel's ignorance or inadvertence rather than from a deliberate decision, for whatever reason, to withhold a claim.

Indeed, the rule applied by the Court of Appeals would significantly increase the costs associated with a procedural default in many cases.   In order to determine whether there was cause for a procedural default, federal habeas courts would routinely be required to hold evidentiary hearings to determine what prompted counsel's failure to raise the claim in question.   While the federal habeas courts would no doubt strive to minimize the burdens to all concerned through the use of affidavits or other simplifying procedures, we are not prepared to assume that these costs would be negligible, particularly since, as we observed in *Strickland* v. *Washington,* 466 U. S. 668, 690 (1984), "[i]ntensive scrutiny of counsel . . . could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases,

and undermine the trust between attorney and client." Nor will it always be easy to classify counsel's behavior in accordance with the deceptively simple categories propounded by the Court of Appeals. Does counsel act out of "ignorance," for example, by failing to raise a claim for tactical reasons after mistakenly assessing its strength on the basis of an incomplete acquaintance with the relevant precedent? The uncertain dimensions of any exception for "inadvertence" or "ignorance" furnish an additional reason for rejecting it.

We think, then, that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland* v. *Washington, supra,* we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, see *Reed* v. *Ross,* 468 U. S., at 16, or that "some interference by officials," *Brown* v. *Allen,* 344 U. S. 443, 486 (1953), made compliance impracticable, would constitute cause under this standard.

Similarly, if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not "conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance." *Cuyler* v. *Sullivan,* 446 U. S. 335, 344 (1980). Ineffective assistance of counsel, then, is cause for a procedural default. However, we think that the exhaustion

doctrine, which is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," *Rose* v. *Lundy*, 455 U. S. 509, 518 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause—a question of federal law— without deciding an independent and unexhausted constitutional claim on the merits. But if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available. The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court "to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," *Darr* v. *Burford*, 339 U. S. 200, 204 (1950), and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

It is clear that respondent failed to show or even allege cause for his procedural default under this standard for cause, which *Engle* squarely supports. Respondent argues nevertheless that his case is not controlled by *Engle* because it involves a procedural default on appeal rather than at trial. Respondent does not dispute, however, that the cause and prejudice test applies to procedural defaults on appeal, as we plainly indicated in *Reed* v. *Ross*, 468 U. S., at 11. *Reed*, which involved a claim that was defaulted *on appeal*, held that a habeas petitioner could establish cause for a procedural default if his claim is "so novel that its legal basis is not rea-

sonably available to counsel," *id.*, at 16. That holding would have been entirely unnecessary to the disposition of the prisoner's claim if the cause and prejudice test were inapplicable to procedural defaults on appeal.

The distinction respondent would have us draw must therefore be made, if at all, in terms of the content of the cause requirement as applied to procedural defaults on appeal. Accordingly, respondent asks us to affirm the Court of Appeals' judgment on the narrow ground that even if counsel's ignorance or inadvertence does not constitute cause for a procedural default at trial, it does constitute cause for a procedural default on appeal. In support of this distinction, respondent asserts that the concerns that underlie the cause and prejudice test are not present in the case of defaults on appeal. A default on appeal, he maintains, does not detract from the significance of the trial or from the development of a full trial record, or deprive the trial court of an opportunity to correct error without the need for retrial. Moreover, unlike the rapid pace of trial, in which it is a matter of necessity that counsel's decisions bind the defendant, "the appellate process affords the attorney time for reflection, research, and full consultation with his client." Brief for Respondent 19. Finally, respondent suggests that there is no likelihood that an attorney will preserve an objection at trial yet choose to withhold it on appeal in order to "sandbag" the prosecution by raising the claim on federal habeas if relief is denied by the state courts.

These arguments are unpersuasive. A State's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack. The important role of appellate procedural rules is aptly captured by the Court's description in *Reed* v. *Ross* of the purposes served by the procedural rule at issue there, which required the defendant initially to raise his legal claims on appeal rather than on postconviction review:

> "It affords the state courts the opportunity to resolve the issue shortly after trial, while evidence is still avail-

able both to assess the defendant's claim and to retry the defendant effectively if he prevails in his appeal. See Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 147 (1970). This type of rule promotes not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case." 468 U. S., at 10–11.

These legitimate state interests, which are manifestly furthered by the comparable procedural rule at issue in this case, warrant our adherence to the conclusion to which they led the Court in *Reed* v. *Ross*—that the cause and prejudice test applies to defaults on appeal as to those at trial.

We likewise believe that the standard for cause should not vary depending on the timing of a procedural default or on the strength of an uncertain and difficult assessment of the relative magnitude of the benefits attributable to the state procedural rules that attach at each successive stage of the judicial process. "Each State's complement of procedural rules . . . channel[s], to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently." *Id.*, at 10. It is apparent that the frustration of the State's interests that occurs when an appellate procedural rule is broken is not significantly diminished when counsel's breach results from ignorance or inadvertence rather than a deliberate decision, tactical or not, to abstain from raising the claim. Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and "undercut[s] the State's ability to enforce its procedural rules." *Engle*, 456 U. S., at 129. As with procedural defaults at trial, these costs are imposed on the State regardless of the kind of attorney error that led to the procedural default. Nor do we

agree that the possibility of "sandbagging" vanishes once a trial has ended in conviction, since appellate counsel might well conclude that the best strategy is to select a few promising claims for airing on appeal, while reserving others for federal habeas review should the appeal be unsuccessful. Moreover, we see little reason why counsel's failure to detect a colorable constitutional claim should be treated differently from a deliberate but equally prejudicial failure by counsel to raise such a claim. The fact that the latter error can be characterized as a misjudgment, while the former is more easily described as an oversight, is much too tenuous a distinction to justify a regime of evidentiary hearings into counsel's state of mind in failing to raise a claim on appeal.

The real thrust of respondent's arguments appears to be that on appeal it is inappropriate to hold defendants to the errors of their attorneys. Were we to accept that proposition, defaults on appeal would presumably be governed by a rule equivalent to *Fay* v. *Noia*'s "deliberate bypass" standard, under which only personal waiver by the defendant would require enforcement of a procedural default. We express no opinion as to whether counsel's decision not to take an appeal at all might require treatment under such a standard, see *Wainwright* v. *Sykes*, 433 U. S., at 88, n. 12, but, for the reasons already given, we hold that counsel's failure to raise a *particular* claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts. Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

## III

Concurring in the judgment, JUSTICE STEVENS contends that our decision today erects an unwarranted procedural

barrier to the correction through federal habeas corpus of violations of fundamental constitutional rights that have resulted in a miscarriage of justice. The cause and prejudice test, in his view, "must be considered within an overall inquiry into justice," *post*, at 504, which requires consideration in every case of the character of the constitutional claim. If the federal right asserted is of "fundamental importance," *post*, at 499, or if a violation of that right "calls into question the accuracy of the determination of . . . guilt," *ibid.*, JUSTICE STEVENS would then balance "the nature and strength of the constitutional claim" and "the nature and strength of the state procedural rule that has not been observed." *Post*, at 506.

At the outset, it should be noted that this balancing is more apparent than real, for the concurrence makes plain that the controlling consideration must be whether the petitioner was denied "'fundamental fairness in the state-court proceedings.'" *Post*, at 506, n. 13 (quoting *Rose* v. *Lundy*, 455 U. S. 509, 547, n. 17 (1982) (STEVENS, J., dissenting)). And, while JUSTICE STEVENS argues at some length that an appellate default should be given less weight than a trial default in applying the balancing process he proposes, it is hard to believe that this distinction would make any difference given his simultaneous insistence on "carefully preserv[ing] the exception which enables the federal writ to grant relief in cases of manifest injustice," *post*, at 515—an exception that he clearly would endorse regardless of the timing of the default.

The effect of such a reworking of the cause and prejudice test would essentially be to dispense with the requirement that the petitioner show cause and instead to focus exclusively on whether there has been a "manifest injustice" or a denial of "fundamental fairness." We are not told whether this inquiry would require the same showing of actual prejudice that is required by the cause and prejudice test as interpreted in *Engle* and in *United States* v. *Frady*, 456 U. S. 152 (1982), but the thrust of the concurrence leaves little doubt that this is so. The showing of prejudice required under

*Wainwright* v. *Sykes* is significantly greater than that necessary under "the more vague inquiry suggested by the words 'plain error.'" *Engle,* 456 U. S., at 135; *Frady, supra,* at 166. See also *Henderson* v. *Kibbe,* 431 U. S. 145, 154 (1977). The habeas petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady, supra,* at 170. Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied "fundamental fairness" at trial. Since, for JUSTICE STEVENS, a "constitutional claim that implicates 'fundamental fairness' . . . compels review regardless of possible procedural defaults," *post,* at 501, n. 8, it follows that a showing of prejudice would invariably make a showing of cause unnecessary.

As the concurrence acknowledges, *Engle* expressly rejected this contention that a showing of actual prejudice "should permit relief even in the absence of cause." 456 U. S., at 134, n. 43. It may be true that the former Rule 12(b)(2) of the Federal Rules of Criminal Procedure, as interpreted in *Shotwell Mfg. Co.* v. *United States,* 371 U. S. 341 (1963), and *Davis* v. *United States,* 411 U. S. 233 (1973), treated prejudice as a component of the inquiry into whether there was cause for noncompliance with that rule. But, while the cause and prejudice test adopted in *Wainwright* v. *Sykes* finds its antecedents in cases interpreting Rule 12(b)(2), the Court in *Wainwright* v. *Sykes* declared that it was applying "the rule of *Francis* v. *Henderson* . . . barring federal habeas review absent a showing of 'cause' and 'prejudice' attendant to a state procedural waiver." 433 U. S., at 87. In *Francis,* the Court could not have been clearer that *both* cause and prejudice must be shown, at least in a habeas corpus proceeding challenging a state court conviction. 425 U. S., at 542 (requiring "not only a showing of 'cause' for the defendant's failure to challenge the composition of the grand

jury before trial, but also a showing of actual prejudice"). We deal here with habeas review of a state court conviction, and at least three decisions of this Court—*Francis, Sykes,* and *Engle*—are unambiguously contrary to the approach taken in the concurrence. We are unprepared, in the face of this weight of authority and in view of the principles of comity and finality these decisions reflect, to reduce the cause requirement to the vestigial role JUSTICE STEVENS envisions for it.

Moreover, although neither *Francis* nor *Wainwright* v. *Sykes* involved a constitutional claim that directly called into question the accuracy of the determination of the petitioner's guilt, the defaulted claims in *Engle*, no less than respondent's claim in this case, did involve issues bearing on the reliability of the verdict. *In re Winship*, 397 U. S. 358 (1970), which was "the basis for [the prisoners'] constitutional claim" in *Engle, supra*, at 131, holds that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship, supra*, at 364. In *Ivan V.* v. *City of New York*, 407 U. S. 203, 205 (1972) *(per curiam)*, the Court held the rule in *Winship* to be retroactive, because "the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in *Winship* was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function." Consequently, our rejection in *Engle* of the contention advanced today—that cause need not be shown if actual prejudice is shown—is fully applicable to constitutional claims that call into question the reliability of an adjudication of legal guilt.

However, as we also noted in *Engle*, "[i]n appropriate cases" the principles of comity and finality that inform the concepts of cause and prejudice "must yield to the imperative of correcting a fundamentally unjust incarceration." 456 U. S., at 135. We remain confident that, for the most part, "victims of a fundamental miscarriage of justice will meet the

cause-and-prejudice standard." *Ibid.* But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

There is an additional safeguard against miscarriages of justice in criminal cases, and one not yet recognized in state criminal trials when many of the opinions on which the concurrence relies were written. That safeguard is the right to effective assistance of counsel, which, as this Court has indicated, may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial. *United States* v. *Cronic,* 466 U. S. 648, 657, n. 20 (1984). See also *Strickland* v. *Washington,* 466 U. S., at 693–696. The presence of such a safeguard may properly inform this Court's judgment in determining "[w]hat standards should govern the exercise of the habeas court's equitable discretion" with respect to procedurally defaulted claims, *Reed* v. *Ross,* 468 U. S., at 9. The ability to raise ineffective assistance claims based in whole or in part on counsel's procedural defaults substantially undercuts any predictions of unremedied manifest injustices. We therefore remain of the view that adherence to the cause and prejudice test "in the conjunctive," *Engle, supra,* at 134, n. 43, will not prevent federal habeas courts from ensuring the "fundamental fairness [that] is the central concern of the writ of habeas corpus." *Strickland* v. *Washington, supra,* at 697.

The cause and prejudice test may lack a perfect historical pedigree. But the Court acknowledged as much in *Wainwright* v. *Sykes,* noting its "historic willingness to overturn or modify its earlier views of the scope of the writ, even where the statutory language authorizing judicial action has remained unchanged." 433 U. S., at 81. The cause and prejudice test as interpreted in *Engle* and in our decision

today is, we think, a sound and workable means of channeling the discretion of federal habeas courts.

## IV

Respondent has never alleged any external impediment that might have prevented counsel from raising his discovery claim in his petition for review, and has disavowed any claim that counsel's performance on appeal was so deficient as to make out an ineffective assistance claim. See generally *Evitts* v. *Lucey,* 469 U. S. 387 (1985) (right to effective assistance of counsel applies on an appeal as of right). Respondent's petition for federal habeas review of his procedurally defaulted discovery claim must therefore be dismissed for failure to establish cause for the default, unless it is determined on remand that the victim's statements contain material that would establish respondent's actual innocence.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, concurring in the judgment.

The heart of this case is a prisoner's claim that he was denied access to material that might have established his innocence. The significance of such a claim can easily be lost in a procedural maze of enormous complexity.

The nature of the prisoner's claim, and its importance, would be especially easy to overlook in this case because the case involves at least four possible procedural errors. A Virginia trial judge may have erroneously denied respondent's counsel access to statements that the victim had made to the police. The Virginia Supreme Court did not address this issue because, although respondent's counsel included it in the assignment of errors in his "notice of appeal," he omitted it from his "petition for appeal." In a subsequent federal habeas corpus proceeding, the District Court held that the

procedural default in the state appellate court effected a waiver of any right to federal relief and therefore dismissed the petition without examining the victim's statements. The Court of Appeals, however, concluded that there was no waiver if counsel's omission was the consequence of inadvertence and ordered a remand for a hearing to determine whether the lawyer had made a deliberate decision to omit the error from the petition for appeal. We granted certiorari to review that decision.

This Court now reverses, holding that there is no need for a hearing on counsel's motivation and that, instead, the District Court should determine whether there is merit to the habeas corpus application by making an examination of the victim's statements. I concur in its judgment remanding the case for further proceedings on the substance of the claim, and dispensing with the procedural hearing ordered by the Court of Appeals; I disagree, however, with much of what the Court has written about "cause and prejudice," as well as with its announcement of a new standard to govern the District Court's ultimate disposition of the case.

I

The character of respondent's constitutional claim should be central to an evaluation of his habeas corpus petition. Before and during his trial on charges of rape and abduction, his counsel made timely motions for discovery of the statements made by the victim to the police. By denying those motions, the trial court significantly curtailed the defendant's ability to cross-examine the prosecution's most important witness, and may well have violated the defendant's right to review "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment." *Brady* v. *Maryland*, 373 U. S. 83, 87 (1963). That right is unquestionably protected by the Due Process Clause. *Ibid.* See also *United States* v. *Bagley*, 473 U. S. 667 (1985); *United States* v. *Agurs*, 427 U. S. 97 (1976). Indeed, the

Court has repeatedly emphasized the fundamental importance of that federal right.[1]

The constitutional claim advanced by respondent calls into question the accuracy of the determination of his guilt. On the record before us, however, we cannot determine whether or not he is the victim of a miscarriage of justice. Respondent argues that the trial court's analysis was severely flawed.[2] Even if the trial judge applied the correct standard, the conclusion that there was no "exculpatory" material in the victim's statements does not foreclose the possibility that inconsistencies between the statements and the direct testimony would have enabled an effective cross-examination to demonstrate that respondent is actually innocent.[3] On the other hand, it is possible that other evidence of guilt in the record is so overwhelming that the trial judge's decision was clearly not prejudicial to the defendant. The important point is that we cannot evaluate the possibility that respondent may be the victim of a fundamental miscarriage of justice without any knowledge about the contents of the victim's statements.

---

[1] See *Brady* v. *Maryland*, 373 U. S., at 87 ("The principle . . . is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly"); *United States* v. *Bagley*, 473 U. S., at 675 ("The *Brady* rule is based on the requirement of due process. Its purpose is . . . to ensure that a miscarriage of justice does not occur").

[2] See *Carrier* v. *Hutto*, 724 F. 2d 396, 399 (CA4 1983) ("Carrier urges that the standard which should have been employed by the court in delimiting discovery was whether the evidence specifically requested was 'material . . . to guilt,' *Brady*, 373 U. S., at 87 . . . not whether it was exculpatory").

[3] Indeed, a major element of respondent's defense was precisely that the victim's identification was mistaken. See Tr. 152–207 (cross-examination of victim); *id.*, at 554–560 (defense closing argument's discussion of problems with victim's identification).

In deciding whether the District Court should have examined these statements before dismissing respondent's habeas corpus petition, it is useful to recall the historic importance of the Great Writ. "The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris* v. *Nelson*, 394 U. S. 286, 290–291 (1969). Its well-known history bears repetition. The writ emerged in England several centuries ago,[4] and was given explicit protection in our Constitution.[5] The first Judiciary Act provided federal habeas corpus for federal prisoners.[6] In 1867, Congress provided the writ of habeas corpus for state prisoners; the Act gave federal courts "power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the Constitution, or any treaty or law of the United States."[7] The current statute confers similar power, 28 U. S. C. § 2241(c)(3), and provides: "The court shall . . . dispose of the matter as law and justice require." 28 U. S. C. § 2243.

As the statute suggests, the central mission of the Great Writ should be the substance of "justice," not the form of procedures. As Justice Frankfurter explained in his separate opinion in *Brown* v. *Allen*, 344 U. S. 443, 498 (1953):

> "The meritorious claims are few, but our procedures must ensure that those few claims are not stifled by undiscriminating generalities. The complexities of our federalism and the workings of a scheme of government involving the interplay of two governments, one of which is subject to limitations enforceable by the other, are not to be escaped by simple, rigid rules which, by avoiding some abuses, generate others."

---

[4] See 3 W. Blackstone, Commentaries *129–*138.

[5] Art. I, § 9, cl. 2.

[6] Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 81–82.

[7] Judiciary Act of Feb. 5, 1867, ch. 28, 14 Stat. 385–386.

In *Hensley* v. *Municipal Court*, 411 U. S. 345, 349–350 (1973), the Court similarly emphasized this approach, stating:

"Our recent decisions have reasoned from the premise that habeas corpus is not 'a static, narrow, formalistic remedy,' *Jones* v. *Cunningham*, [371 U. S. 236,] 243 [(1963)], but one which must retain the 'ability to cut through barriers of form and procedural mazes.' *Harris* v. *Nelson*, 394 U. S. 286, 291 (1969). See *Frank* v. *Mangum*, 237 U. S. 309, 346 (1915) (Holmes, J., dissenting). 'The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.' *Harris* v. *Nelson*, *supra*, at 291.

"Thus, we have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements."

Accordingly, the statutory mandate to "dispose of the matter as law and justice require" clearly requires at least some consideration of the character of the constitutional claim.[8]

## II

In my opinion, the "cause and prejudice" formula that the Court explicates in such detail today is not dispositive when the fundamental fairness of a prisoner's conviction is at issue. That formula is of recent vintage, particularly in comparison to the writ for which it is invoked. It is, at most, part of a broader inquiry into the demands of justice.

---

[8] See also *Strickland* v. *Washington*, 466 U. S. 668, 697 (1984) ("fundamental fairness is the central concern of the writ of habeas corpus"). Although a constitutional claim that may establish innocence is clearly the most compelling case for habeas review, it is by no means the only type of constitutional claim that implicates "fundamental fairness" and that compels review regardless of possible procedural defaults. See *Rose* v. *Lundy*, 455 U. S. 509, 543–544 (1982) (STEVENS, J., dissenting).

The Court cites *Wainwright* v. *Sykes*, 433 U. S. 72 (1977) as authority for its "cause and prejudice" standard. The actual source of the standard, however, is Rule 12(b)(2) of the Federal Rules of Criminal Procedure. For *Wainwright* relied on cases construing that Rule in announcing the standard. See *id.*, at 84–85.

Rule 12(b)(2) specifies the procedure for asserting defenses and objections based on defects in the institution of a federal prosecution. Until part of the Rule was shifted to Rule 12(f), Rule 12(b)(2) expressly provided that the failure to follow the specified procedure in presenting any such defense or objection "constitutes waiver thereof"; the Rule included a proviso authorizing the court to grant relief from the waiver "for cause shown."[9] Under the terms of the Rule, the inquiry into "cause" was not made to ascertain whether a waiver occurred; rather, its function was to determine whether a waiver should be excused.

The term "prejudice" was not used in Rule 12(b)(2). In construing the rule in *Shotwell Mfg. Co.* v. *United States*, 371 U. S. 341 (1963), however, the Court decided that a consideration of the prejudice to the defendant, or the absence thereof, was an appropriate component of the inquiry into whether there was "cause" for excusing the waiver that had resulted from the failure to follow the Rule.[10] Thus, under

---

[9] In 1963, when the Court decided *Shotwell Mfg. Co.* v. *United States*, 371 U. S. 341, Rule 12(b)(2) provided in relevant part:

"Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. . . . Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver." See 371 U. S., at 362.

Rule 12 has been amended since 1963 but it retains the provision for an express waiver subject to the proviso that "the court for cause shown may grant relief from the waiver." See Rule 12(f).

[10] "Finally, both courts below have found that petitioners were not prejudiced in any way by the alleged illegalities in the selection of the ju-

the reasoning of the *Shotwell* case—as well as the text of the Rule itself—"cause" and "prejudice" were not separate obstacles that a defendant was required to overcome to avoid a waiver. Rather, the cause component explicitly included an inquiry into "prejudice"—into the nature of the claim and its effect.

In *Davis* v. *United States*, 411 U. S. 233 (1973), the Court held that "the sort of express waiver provision contained in Rule 12(b)(2) which specifically provides for the waiver of a particular kind of constitutional claim if it be not timely asserted," *id.*, at 239–240, bars a challenge, absent "cause," to the composition of the grand jury not only on direct federal review, but also in a federal habeas challenge to a federal conviction. Thus, in *Davis*, as in *Shotwell*, the Court simply enforced a federal rule that contained an express waiver provision. Notably, in *Davis*, the Court again considered both cause *and* prejudice as part of a single inquiry. 411 U. S., at 243–245.

The *Davis* holding, in turn, provided the basis for the Court's decision in *Francis* v. *Henderson*, 425 U. S. 536 (1976). In that case, the Court reviewed a Louisiana rule similar to the Federal Rule at issue in *Davis* and a similar constitutional claim. Relying on *Davis*, the Court held that the state prisoner, having failed to make a timely challenge to the grand jury that indicted him, could not challenge his state conviction in a federal habeas corpus proceeding without making a showing of both "cause" for the failure and "actual prejudice." The Court cited the *Davis* cause-and-prejudice

ries. Nor do petitioners point to any resulting prejudice. In *Ballard* it was said (at p. 195) that 'reversible error does not depend on a showing of prejudice in an individual case.' However, where, as here, objection to the jury selection has not been timely raised under Rule 12(b)(2), it is entirely proper to take absence of prejudice into account in determining whether a sufficient showing has been made to warrant relief from the effect of that Rule." 371 U. S., at 363 (footnote omitted).

analysis in determining that prejudice had not been established. 425 U. S., at 542, and n. 6.

*Davis* and *Francis* then provided the basis for the conclusion in *Wainwright* v. *Sykes, supra,* that the failure to make a contemporaneous objection to the admission of evidence at trial will ordinarily bar a postconviction attack on the use of such evidence absent an appropriate showing of cause and prejudice. However, the Court's opinion in *Wainwright* v. *Sykes* carefully avoided any rigid definition of the terms "cause" and "prejudice"—terms which under Rule 12 had been used to identify two components of a single inquiry to determine whether an express waiver should be excused. Indeed, in *Wainwright,* the Court made very clear that, although "cause and prejudice" structured a court's inquiry, they were not rigid procedural rules that prevented the writ's fundamental mission—serving justice—from being realized: "The 'cause-and-prejudice' exception of the *Francis* rule will afford an adequate guarantee, we think, that the rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice." 433 U. S., at 90–91. In *Wainwright* itself, the Court inquired into *both* cause and prejudice; the prejudice inquiry, of course, required some inquiry into the nature of the claim and its effect on the trial. *Id.,* at 91.

In a recent exposition of the "cause and prejudice" standard, moreover, the Court again emphasized that "cause and prejudice" must be considered within an overall inquiry into justice. In *Engle* v. *Isaac,* 456 U. S. 107 (1982), the Court closed its opinion with the assurance that it would not allow its judge-made "cause" and "actual prejudice" standard to become so rigid that it would foreclose a claim of this kind:

> "The terms 'cause' and 'actual prejudice' are not rigid concepts; they take their meaning from the principles of comity and finality discussed above. In appropriate

cases those principles must yield to the imperative of correcting a fundamentally unjust incarceration. Since we are confident that victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard, see *Wainwright* v. *Sykes*, 433 U. S., at 91; *id.*, at 94–97 (STEVENS, J., concurring), we decline to adopt the more vague inquiry suggested by the words 'plain error.'" *Id.*, at 135.[11]

In order to be faithful to that promise, we must recognize that cause and prejudice are merely components of a broader inquiry which, in this case, cannot be performed without an examination of the victim's statements.[12]

---

[11] In the concurring opinion cited by the Court, presumably with approval, I had written:

"The notion that a client must always consent to a tactical decision not to assert a constitutional objection to a proffer of evidence has always seemed unrealistic to me. Conversely, if the constitutional issue is sufficiently grave, even an express waiver by the defendant himself may sometimes be excused. Matters such as the competence of counsel, the procedural context in which the asserted waiver occurred, *the character of the constitutional right at stake,* and the overall fairness of the entire proceeding, may be more significant than the language of the test the Court purports to apply." *Wainwright* v. *Sykes,* 433 U. S. 72, 94–96 (1977) (footnotes omitted; emphasis added).

[12] Inconsistently, in *Engle* v. *Isaac,* alongside its references to fundamental fairness, the Court also emphasized that a failure to show cause could bar review regardless of the character of the claim. See, *e. g.,* 456 U. S., at 134, n. 43 ("Since we conclude that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice. Respondents urge that their prejudice was so great that it should permit relief even in the absence of cause. *Sykes,* however, stated these criteria in the conjunctive and the facts of these cases do not persuade us to depart from that approach"); *id.,* at 129 ("The costs outlined above do not depend upon the type of claim raised by the prisoner. While the nature of a constitutional claim may affect the calculation of cause and prejudice, it does not alter the need to make that threshold showing"). The Court's rigid invocation of the "cause" obstacle in an opinion that also emphasized the demands of "fundamental fairness" illustrates the confusion that has accompanied the Court's creation and imposition of the cause-

### III

An inquiry into the requirements of justice requires a consideration, not only of the nature and strength of the constitutional claim, but also of the nature and strength of the state procedural rule that has not been observed. In its opinion today, the Court relies heavily on cases in which the defendant failed to make a contemporaneous objection to an error that occurred during a trial. Most of the reasons for finding a waiver in that setting simply do not apply to the appellate process. Of special importance is the fact that the state interest in enforcing its contemporaneous-objection rule is supported, not merely by the concern with finality that characterizes state appellate rules, but also by the concern with making the trial the "main event" in which the issue of guilt or innocence can be fairly resolved.[13]

This Court has not often considered procedural defaults that have occurred at the appellate, rather than trial, level.

---

and-prejudice standard. See also *id.*, at 126 ("Today, as in prior centuries, the writ is a bulwark against convictions that violate 'fundamental fairness'") (quoting *Wainwright* v. *Sykes*, 433 U. S., at 97 (STEVENS, J., concurring)).

[13] See *Wainwright* v. *Sykes*, 433 U. S., at 90. Cf. *Engle* v. *Isaac*, 456 U. S., at 136, n. 1 (STEVENS, J., concurring in part and dissenting in part) ("The failure to object generally indicates that defense counsel felt that the trial error was not critical to his client's case; presumably, therefore, the error did not render the trial fundamentally unfair"). Even in the trial context, however, the lack of objection should not be completely preclusive. See *Rose* v. *Lundy*, 455 U. S., at 547–548, n. 17 (STEVENS, J., dissenting):

"The failure of otherwise competent defense counsel to raise an objection at trial is often a reliable indication that the defendant was not denied fundamental fairness in the state-court proceedings. The person best qualified to recognize such error is normally a defendant's own lawyer. Thus, in searching for fundamental unfairness in a trial record, I attach great importance to the character of the objection, if any, asserted by the defendant's counsel. But if such error is manifest, I would not wrestle with terms such as 'cause' and 'prejudice' to determine whether habeas corpus relief should be granted."

In my view, it is not a coincidence that three of the most forceful and incisive analyses of the relationship between federal habeas corpus and state procedural defaults have emerged in the few cases involving appellate defaults. For, with an appellate default, the state interest in procedural rigor is weaker than at trial, and the transcendence of the Great Writ is correspondingly clearer. The opinions to which I refer are the dissenting opinions in *Daniels* v. *Allen*, 344 U. S. 443 (1953), and the Court's opinions in *Fay* v. *Noia*, 372 U. S. 391 (1963), and *Reed* v. *Ross*, 468 U. S. 1 (1984).

In *Daniels*, one of the three cases that gave rise to the opinions in *Brown* v. *Allen*, 344 U. S. 443 (1953), two petitioners challenged their convictions and death sentences on the ground that the trial judge had erroneously denied their timely objection to the admission of allegedly coerced confessions and to the alleged discrimination against blacks in the selection of both grand and petit jurors. See *id.*, at 453. After the trial court entered judgment and pronounced its sentence, the petitioners filed a notice of appeal and were granted 60 days in which to serve a statement of the case on opposing counsel. As a result of the negligence or inadvertence of petitioners' counsel, the statement was not served on the prosecutor until the 61st day and petitioners' right to appeal was lost. The State Supreme Court declined to exercise its discretion to review the merits of their appeal.

For reasons that are ambiguous at best,[14] the Court held that the procedural default barred a subsequent federal habeas corpus petition unless the opportunity to appeal had

---

[14] Commenting on the holding in *Daniels*, Justice Harlan wrote:

"Language in Mr. Justice Reed's opinion for the Court appeared to support the result alternatively in terms of waiver, failure to exhaust state remedies, and the existence of an adequate state ground. But while the explanation may have been ambiguous, the result was clear: habeas corpus would not lie for a prisoner who was detained pursuant to a state judgment which, in the view of the majority in *Daniels*, rested on a reasonable application of the State's own procedural requirements." *Fay* v. *Noia*, 372 U. S. 391, 461–462 (1963) (dissenting opinion) (footnotes omitted).

been lost "because of lack of counsel, incapacity, or some interference by officials." *Id.*, at 485–486. Because the *Daniels* holding was repudiated in *Fay* v. *Noia,* 372 U. S. 391 (1963), Justice Black's penetrating dissent commands greater respect than Justice Reed's ambiguous opinion for the Court.[15] Justice Black wrote:

> "*Fourth. Daniels* v. *Allen,* No. 20. Here also evidence establishes an unlawful exclusion of Negroes from juries because of race. The State Supreme Court refused to review this evidence on state procedural grounds. Absence of state court review on this ground is now held to cut off review in federal habeas corpus proceedings. But in the two preceding cases where the State Supreme Court did review the evidence, this Court has also reviewed it. I find it difficult to agree with the soundness of a philosophy which prompts this Court to grant a second review where the state has granted one but to deny any review at all where the state has granted none.
>
> .        .        .        .        .
>
> "The Court thinks that to review this question and grant petitioners the protections guaranteed by the Constitution would 'subvert the entire system of state criminal justice and destroy state energy in the detection and punishment of crime.' I cannot agree. State systems are not so feeble. And the object of habeas corpus is to search records to prevent illegal imprisonments. To hold it unavailable under the circumstances here is to degrade it. I think *Moore* v. *Dempsey,* 261 U. S. 86, forbids this. In that case Negroes had been convicted and sentenced to death by an all-white jury selected under a

---

[15] Indeed, even the dissenters in *Fay* v. *Noia* did not defend the specific analysis in *Daniels.* See 372 U. S., at 462 (Harlan, J., dissenting) ("I do not pause to reconsider here the question whether the state ground in *Daniels* was an adequate one; persuasive arguments can be made that it was not").

practice of systematic exclusion of Negroes from juries. The State Supreme Court had refused to consider this discrimination on the ground that the objection to it had come too late. This Court had denied certiorari. Later a federal district court summarily dismissed a petition for habeas corpus alleging the foregoing and other very serious acts of trial unfairness, all of which had been urged upon this Court in the prior certiorari petition. This Court nevertheless held that the District Court had committed error in refusing to examine the facts alleged. I read *Moore* v. *Dempsey, supra,* as standing for the principle that it is never too late for courts in habeas corpus proceedings to look straight through procedural screens in order to prevent forfeiture of life or liberty in flagrant defiance of the Constitution. Cf. *United States* v. *Kennedy,* 157 F. 2d 811, 813. Perhaps there is no more exalted judicial function. I am willing to agree that it should not be exercised in cases like these except under special circumstances or in extraordinary situations. But I cannot join in any opinion that attempts to confine the Great Writ within rigid formalistic boundaries." *Brown* v. *Allen,* 344 U. S., at 552–554.

With respect to the specific argument that the Court should not permit federal habeas corpus to be used as a substitute for a state appeal, Justice Frankfurter similarly responded:

"The basic reason for closing both the federal and State courts to the petitioners on such serious claims and under these circumstances is the jejune abstraction that habeas corpus cannot be used for an appeal. Judge Soper dealt with the deceptiveness of this formula by quoting what Judge Learned Hand had found to be the truth in regard to this generality thirty years ago:

"'We shall not discuss at length the occasions which will justify resort to the writ, where the objection has been

open on appeal. After a somewhat extensive review of the authorities twenty-four years ago, I concluded that the law was in great confusion; and the decisions since then have scarcely tended to sharpen the lines. We can find no more definite rule than that the writ is available, not only to determine points of jurisdiction, stricti juris, and constitutional questions; but whenever else resort to it is necessary to prevent a complete miscarriage of justice.' *Kulick* v. *Kennedy*, 157 F. 2d 811, 813." *Id.*, at 558 (dissenting opinion).

Thus, in their *Daniels* dissents, both Justice Black and Justice Frankfurter vigorously disagreed with the Court's view that the petitioners' appellate default—their failure to file a timely appeal—barred review of a meritorious constitutional claim.

As noted, the view of the *Daniels* Court on the propriety of federal habeas proceedings after a procedural default was repudiated in *Fay* v. *Noia*, 372 U. S. 391 (1963), a case which also concerned an appellate default. Noia had made a timely objection to the admissibility of his confession in his trial on a charge of felony murder, but he allowed the time for a direct appeal to lapse without seeking review by a New York appellate court. In response to his subsequent application for a federal writ of habeas corpus, the State admitted that his conviction rested on a confession that had been obtained from him in violation of the Fourteenth Amendment, but contended that his failure to appeal foreclosed any relief in the federal courts. This Court rejected that contention. In a comprehensive opinion the Court restated three propositions of law that have not thereafter been questioned; the *Noia* opinion also, however, contained certain dicta that has been qualified by later opinions.

The propositions that *Noia* firmly established are these: First, the *power* of the federal district court to issue the writ of habeas corpus survives an adverse decision by a state court, whether the state judgment is based on a review of the

merits of the federal claim or on the applicant's procedural default.[16]  Second, although a State's interest in orderly appellate procedure justifies a denial of appellate review *in the state system* when the inadvertence or neglect of defense counsel causes a procedural default, that state interest is not sufficient to bar a federal remedy in appropriate cases.[17]

---

[16] "We have reviewed the development of habeas corpus at some length because the question of the instant case has obvious importance to the proper accommodation of a great constitutional privilege and the requirements of the federal system.  Our survey discloses nothing to suggest that the Federal District Court lacked the *power* to order Noia discharged because of a procedural forfeiture he may have incurred under state law.  On the contrary, the nature of the writ at common law, the language and purpose of the Act of February 5, 1867, and the course of decisions in this Court extending over nearly a century are wholly irreconcilable with such a limitation.  At the time the privilege of the writ was written into the Federal Constitution it was settled that the writ lay to test any restraint contrary to fundamental law, which in England stemmed ultimately from Magna Charta but in this country was embodied in the written Constitution.  Congress in 1867 sought to provide a federal forum for state prisoners having constitutional defenses by extending the habeas corpus powers of the federal courts to their constitutional maximum.  Obedient to this purpose, we have consistently held that federal court jurisdiction is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings.  State procedural rules plainly must yield to this overriding federal policy." 372 U. S., at 426–427.

[17] "A man under conviction for crime has an obvious inducement to do his very best to keep his state remedies open, and not stake his all on the outcome of a federal habeas proceeding which, in many respects, may be less advantageous to him than a state court proceeding.  See *Rogers* v. *Richmond*, 365 U. S. 534, 547–548.  And if because of inadvertence or neglect he runs afoul of a state procedural requirement, and thereby forfeits his state remedies, appellate and collateral, as well as direct review thereof in this Court, those consequences should be sufficient to vindicate the State's valid interest in orderly procedure.  Whatever residuum of state interest there may be under such circumstances is manifestly insufficient in the face of the federal policy, drawn from the ancient principles of the writ of habeas corpus, embodied both in the Federal Constitution and in the habeas corpus provisions of the Judicial Code, and consistently upheld by this

Third, as the converse of the second proposition, *Noia* also holds that the federal district court has discretion to deny relief based on state procedural defaults in appropriate cases.[18] None of these propositions has been questioned in any subsequent case.

The dicta in the *Noia* opinion that has been questioned was an attempt to prescribe a rather rigid limitation on the district court's discretion to deny habeas corpus relief based on the applicant's procedural default. The opinion set forth a standard that seemingly required federal judges to excuse every procedural default unless the habeas applicant had personally approved of his lawyer's deliberate decision to bypass an available state procedure.[19] The breadth of that dicta was

---

Court, of affording an effective remedy for restraints contrary to the Constitution." *Id.*, at 433–434.

[18] "Discretion is implicit in the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter as law and justice require,' 28 U. S. C. § 2243; and discretion was the flexible concept employed by the federal courts in developing the exhaustion rule. Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. *United States ex rel. Smith* v. *Baldi*, 344 U. S. 561, 573 (dissenting opinion). Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks. Narrowly circumscribed, in conformity to the historical role of the writ of habeas corpus as an effective and imperative remedy for detentions contrary to fundamental law, the principle is unexceptionable." *Id.*, at 438.

[19] "If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. *Price* v. *Johnston*, 334 U. S. 266, 291. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. Cf. *Carnley* v. *Cochran*, 369 U. S. 506, 513–517; *Moore* v. *Michigan*, 355 U. S. 155,

ultimately disavowed in *Wainwright* v. *Sykes*, 433 U. S., at 87–88,[20] but the Court has remained faithful to the specific holding in *Noia*—that appellate default in the state system need not bar federal habeas review—as well as to the basic principles announced in that opinion.

Finally, in *Reed* v. *Ross*, 468 U. S. 1 (1984), we again considered the consequences of an appellate procedural default. The defendant had not raised the constitutional error in his appeal to the North Carolina Supreme Court. Relying on *Fay* v. *Noia*, we reaffirmed that the federal court has power to look beyond the state procedural default and entertain the state prisoner's application for a writ of habeas corpus.[21] In determining whether the power should be exercised, we found that the requirements of "cause" and "prejudice" that had been discussed in *Wainwright* v. *Sykes* had both been satisfied. The "cause" for the failure to object was the fact that counsel had not anticipated later decisions from this Court that supported the claim. We explained:

162–165. A choice made by counsel not participated in by the petitioner does not automatically bar relief." *Id.*, at 439 (footnote omitted).

[20] "It is the sweeping language of *Fay* v. *Noia*, going far beyond the facts of the case eliciting it, which we today reject." 433 U. S., at 87–88.

"We have no occasion today to consider the *Fay* rule as applied to the facts there confronting the Court. . . .

"The Court in *Fay* stated its knowing-and-deliberate-waiver rule in language which applied not only to the waiver of the right to appeal, but to failures to raise individual substantive objections in the state trial." *Id.*, at 88, n. 12.

[21] "Our decisions have uniformly acknowledged that federal courts are empowered under 28 U. S. C. § 2254 to look beyond a state procedural forfeiture and entertain a state prisoner's contention that his constitutional rights have been violated. See, *e. g.*, *Francis* v. *Henderson*, 425 U. S. 536, 538 (1976); *Fay* v. *Noia*, 372 U. S. 391, 398–399 (1963). See generally W. Duker, A Constitutional History of Habeas Corpus 181–211 (1980). The more difficult question, and the one that lies at the heart of this case is: What standards should govern the exercise of the habeas court's equitable discretion in the use of this power?" 468 U. S., at 9.

"[T]he cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. And the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met." *Reed* v. *Ross*, 468 U. S., at 14.

In the *Reed* opinion we carefully identified the valid state interest that is served by enforcing a procedural default that forecloses state appellate review of a federal constitutional claim, *id.*, at 10–11; *ante*, at 490–491. But we squarely held that this interest is not sufficient to defeat a meritorious federal claim:

"It is true that finality will be disserved if the federal courts reopen a state prisoner's case, even to review claims that were so novel when the cases were in state court that no one would have recognized them. *This Court has never held, however, that finality, standing alone, provides a sufficient reason for federal courts to compromise their protection of constitutional rights under § 2254.*" 468 U. S., at 15 (emphasis added).

We thus concluded that the appellate default would not bar federal consideration of the constitutional claim.

Like the *Daniels* dissenters, then, in *Fay* and in *Reed*, against the backdrop of appellate defaults, the Court stressed that the State's interest in finality does not preclude review of the federal constitutional claim in a federal habeas court. To be sure, these opinions suggested that the *power* to hear claims which had been defaulted on appeal should be used sparingly—in "special circumstances," in the absence of "deliberate bypass," upon a showing of "cause." Even under such terms, however, our holding in *Reed* governs the case before us today. If the State's interest in the finality of its judgment is not sufficient to defeat a meritorious federal claim that was not raised on appeal because the prisoner's

lawyer did not have the ability to anticipate a later development in the law, there is no reason why the same state interest should defeat a meritorious federal claim simply because the prisoner's lawyer did not exercise due care in prosecuting an appeal. There is no more reason to saddle an innocent prisoner with counsel's omission in one case than in the other.

## IV

Procedural default that is adequate to foreclose appellate review of a claim of constitutional error in a state criminal trial should ordinarily also bar collateral review of such a claim in a federal district court. But the history of the Court's jurisprudence interpreting the Acts of Congress authorizing the issuance of the writ of habeas corpus unambiguously requires that we carefully preserve the exception which enables the federal writ to grant relief in cases of manifest injustice. That exception cannot be adequately defined by a simply stated rule. The procedural default is always an important factor to be carefully reviewed; as Justice Frankfurter explained: "All that has gone before is not to be ignored as irrelevant." *Brown* v. *Allen,* 344 U. S., at 500. But it is equally clear that the prisoner must always have some opportunity to reopen his case if he can make a sufficient showing that he is the victim of a fundamental miscarriage of justice. Whether the inquiry is channeled by the use of the terms "cause" and "prejudice"—or by the statutory duty to "dispose of the matter as law and justice require," 28 U. S. C. § 2243—it is clear to me that appellate procedural default should not foreclose habeas corpus review of a meritorious constitutional claim that may establish the prisoner's innocence.

The Court is therefore entirely correct in its decision to remand the case for further proceedings on the substance of respondent's claim. *Ante,* at 497. Because we did not grant certiorari to consider the proper standard that should govern the further proceedings in the District Court, and because we

have not had the benefit of briefs or argument concerning that standard, I express no opinion on the Court's suggestion that the absence of "cause" for his procedural default requires respondent to prove that the "constitutional violation has probably resulted in the conviction of one who is actually innocent," *ante,* at 496, or on the relationship of that standard to the principles explicated in *United States* v. *Bagley,* 473 U. S. 667 (1985); *United States* v. *Agurs,* 427 U. S. 97 (1976); and *Brady* v. *Maryland,* 373 U. S. 83 (1963). There will be time enough to consider the proper standard after the District Court has examined the victim's statements and made whatever findings may be appropriate to determine whether "law and justice require" the issuance of the Great Writ in this case.

Accordingly, I concur in the judgment but not in the Court's opinion.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.*

I

A

Like the Great Writ from which it draws its essence, see *Engle* v. *Isaac,* 456 U. S. 107, 126 (1982), the root principle underlying 28 U. S. C. § 2254 is that government in a civilized society must always be accountable for an individual's imprisonment; if the imprisonment does not conform to the fundamental requirements of law, the individual is entitled to his immediate release. Of course, the habeas corpus relief available under § 2254 differs in many respects from its common-law counterpart. Most significantly, the scope of the writ has been adjusted to meet changed conceptions of the kind of criminal proceedings so fundamentally defective as to make imprisonment under them unacceptable. See, *e. g., Moore* v. *Dempsey,* 261 U. S. 86 (1923); *Johnson* v.

---

*[This opinion applies also to No. 85–5487, *Smith* v. *Murray, Director, Virginia Department of Corrections, post,* p. 527.]

*Zerbst,* 304 U. S. 458 (1938); *Waley* v. *Johnston,* 316 U. S. 101 (1942); *Brown* v. *Allen,* 344 U. S. 443 (1953); *Fay* v. *Noia,* 372 U. S. 391 (1963). At the same time, statutory habeas relief has become more difficult to obtain as a result of certain procedural limitations created to reflect the unique character of our federal system. See, *e. g.,* 28 U. S. C. § 2254(b) (exhaustion of state remedies).

The "cause and prejudice" rule of *Wainwright* v. *Sykes,* 433 U. S. 72 (1977), is one such procedural limitation. A judicially created restriction that is not required—or even suggested—by the habeas statute itself, the "cause and prejudice" rule is sometimes thought to represent an application of the familiar principle that this Court will decline to review state-court judgments which rest on independent and adequate state grounds, even where those judgments also decide federal questions. To be sure, the fact that a state-court judgment rests on a purely procedural ground may preclude direct Supreme Court review of that judgment where, as applied, the state procedural rule furthers a legitimate interest. See *Henry* v. *Mississippi,* 379 U. S. 443, 447–449 (1965). However, in *Fay* v. *Noia, supra,* the doctrine that procedural defaults may constitute an independent and adequate state-law ground was held not to limit the jurisdiction of the federal courts under the habeas corpus statute. *Id.,* at 426–435. That conclusion has subsequently been reaffirmed on several occasions. See *Francis* v. *Henderson,* 425 U. S. 536, 538 (1976); *Wainwright* v. *Sykes, supra,* at 83; *Reed* v. *Ross,* 468 U. S. 1, 9 (1984).

Despite the existence of federal *power* to entertain a habeas petition in the face of a procedural default, the Court in *Fay* v. *Noia* acknowledged "a limited discretion" in the federal court to refuse to exercise its jurisdiction on behalf of "an applicant who has deliberately by-passed the orderly procedure of the state courts and in doing so has forfeited his state court remedies." 372 U. S., at 438. This exception was recognized "[a]s a matter of comity," *Wainwright* v. *Sykes,*

*supra,* at 83, in order to accord state courts and state procedures the respect due them in a federal system. See *Reed* v. *Ross, supra,* at 10–11; *Engle* v. *Isaac, supra,* at 126–129; *Francis* v. *Henderson, supra,* at 539. Thus, the withholding of federal habeas jurisdiction for certain procedurally defaulted claims is a form of abstention. Cf., *e. g., Younger* v. *Harris,* 401 U. S. 37 (1971); *Burford* v. *Sun Oil Co.,* 319 U. S. 315 (1943).[1]

The general principles for deciding whether abstention is proper are well established. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District* v. *United States,* 424 U. S. 800, 813 (1976). As we have previously noted, "'[t]he doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Ibid.* (quoting *Allegheny County* v. *Frank Mashuda Co.,* 360 U. S. 185, 188 (1959)). Where Congress has granted individuals the right to a federal forum, we cannot deny that right simply because we disagree with Congress' determination that federal review is desirable. Rather, abstention must be justified by weighty concerns of comity and judicial administration, and even then abstention should not be ordered without a careful balancing of those concerns against concerns favoring the exercise of federal jurisdiction. Cf. *Steffel* v. *Thompson,* 415 U. S. 452,

---

[1] There is one important difference between abstention in the habeas context and in other contexts. In our other abstention cases, federal jurisdiction has been withheld partly because of ongoing proceedings or the possibility of future proceedings in the state courts; in the habeas context, the state proceedings have already taken place and the petitioner's federal claim has not been considered on the merits. If anything, however, this difference makes the practice of abstaining more suspect in the habeas context, and suggests that the federal courts should adhere even more closely to the principle—discussed in text—that abstention is a narrow exception to the general rule requiring federal courts to exercise power conferred upon them by Congress.

460–462 (1974); *Wooley* v. *Maynard,* 430 U. S. 705, 709–712 (1977); *Doran* v. *Salem Inn, Inc.,* 422 U. S. 922 (1975).

These principles apply as much to abstention from the exercise of federal habeas corpus jurisdiction as to any other area of federal jurisdiction. For while Congress did leave the federal courts considerable latitude to shape the availability of the writ, Congress did not issue this Court a mandate to sharpen its skills at ad hoc legislating. The same rules of construction that guide interpretation of other statutes apply to the federal habeas corpus statute. Accordingly, the decision whether to direct federal courts to withhold habeas jurisdiction clearly conferred upon them by Congress must be made with the understanding that such abstention doctrines constitute " 'extraordinary and narrow' " exceptions to the "virtually unflagging obligation" of federal courts to exercise their jurisdiction, *Colorado River Water Construction District* v. *United States, supra,* at 813, 817 (quoting *Allegheny County* v. *Frank Mashuda Co., supra,* at 188). Moreover, judicial renouncement of federal habeas corpus jurisdiction can take place only after careful consideration of the competing interests militating for and against the exercise of federal jurisdiction, and the presumption is heavily in favor of exercising federal jurisdiction. 424 U. S., at 817.

## B

The competing interests implicated by a prisoner's petition to a federal court to review the merits of a procedurally defaulted constitutional claim are easily identified. On the one hand, "there is Congress' expressed interest in providing a federal forum for the vindication of the constitutional rights of state prisoners." *Reed* v. *Ross,* 468 U. S., at 10. In enacting § 2254, "Congress sought to 'interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action.' " *Ibid.* (quoting *Mitchum* v. *Foster,* 407 U. S. 225, 242 (1972)). This interest is at its strongest

where the state court has declined to consider the merits of a constitutional claim, for without habeas review no court will ever consider whether the petitioner's constitutional rights were violated.

These interests must be weighed against the State's interest in maintaining the integrity of its rules and proceedings, an interest that would be undermined if the federal courts were too free to ignore procedural forfeitures in state court. 468 U. S., at 10. The criminal justice system in each State is structured both to determine the guilt or innocence of defendants and to resolve all questions incident to that determination, including the constitutionality of the procedures leading to the verdict. Each State's complement of procedural rules facilitates this process by "channeling, to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently." *Ibid.* Procedural default rules protect the integrity of this process by imposing a forfeiture sanction for failure to follow applicable state procedural rules, thereby deterring litigants from deviating from the State's scheme. Generally, the threat of losing the right to raise a claim in state proceedings will be sufficient to ensure compliance with the State's procedural rules: a defendant loses nothing by raising all of his claims at trial since the state-court judgment will have no res judicata effect in later habeas proceedings, *Brown* v. *Allen,* 344 U. S. 443 (1953), while he retains the possibility of obtaining relief in the state courts. See *Wainwright* v. *Sykes,* 433 U. S., at 103–104, and n. 5 (BRENNAN, J., dissenting). Nonetheless, to the extent that federal habeas review of a procedurally defaulted claim is available, the broad deterrent effect of these procedural default rules is somewhat diminished.[2]

---

[2] The Court has often suggested, as it does again today, that the "reduction in the finality of litigation" caused by habeas review justifies a broad construction of the cause-and-prejudice test. *Ante,* at 486–487 (citing *Engle* v. *Isaac,* 456 U. S. 107, 128 (1982)). In fact, "finality" concerns

The Court's view of how properly to balance these competing concerns has changed over time. In *Fay* v. *Noia*, we concluded that the State's interest "in an airtight system of forfeitures" was generally insufficient to require federal courts to refrain from exercising their habeas jurisdiction. 372 U. S., at 432, 438–440. We held that federal courts should refuse to exercise their jurisdiction only "[i]f a habeas applicant . . . understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures." *Id.*, at 439. This holding sensibly ac-

---

have no bearing on the question whether a federal court should refuse to exercise its habeas jurisdiction because of a procedural default. From the standpoint of the State's finality interests, there is no difference whatever between making habeas review available after the state court has denied a claim on the merits, and making such review available after the state court has denied the claim on procedural default grounds. In both situations, the State has determined that the litigation is at an end, and the federal court has reopened the case to consider releasing the petitioner from custody. No one questions the availability of habeas relief where the state court has denied the claim on the merits. Accordingly, treating likes alike, such relief should also be available where the claim is denied because of a procedural default *unless the State's interest in enforcing its default rules requires a different result.* General "finality" concerns simply are not relevant.

The same is true of the Court's other habeas corpus bogeymen, such as the tendency of habeas review to detract from the importance of the trial as the "main event," *Wainwright* v. *Sykes*, 433 U. S. 72, 90 (1977), and to frustrate the State's "good-faith attempts to honor constitutional rights," *Engle* v. *Isaac, supra*, at 128. These "costs" are present whenever a claim has been denied by the state court on the merits in precisely the same way and to precisely the same extent as where that claim is denied on procedural default grounds. Indeed, if anything, these "costs" are present to a *greater* extent where a federal court reviews a constitutional claim that the state court has considered and rejected. Therefore, if federal jurisdiction is to be renounced where there has been a procedural default, it must be because of some particular need to enforce the State's procedural default rules.

commodated the competing interests described above: on the one hand, the State's interest in preventing litigants from ignoring its procedural rules is at its strongest where the decision not to raise a claim is made knowingly and deliberately; correspondingly, the prisoner's entitlement to a federal forum is at its weakest since it may well be only the deliberate failure to submit the claim to the state courts that has necessitated federal review. Under these circumstances, the affront to comity principles is at its greatest: by its indifference in entertaining the petition to the prisoner's trial strategy, the federal court in effect ratifies the deliberate circumvention of state procedural rules. If refusal to exercise federal habeas power to upset a state-court conviction is ever appropriate, it is under circumstances such as these.

The Court struck a somewhat different balance 14 years later when it revisited the question of withholding federal habeas jurisdiction of procedurally defaulted claims in *Wainwright* v. *Sykes*. Police officers testified at Sykes' trial about inculpatory statements he had made in their presence. No objection was made at the time this testimony was offered, which meant, under a state procedural rule, that any objections were forfeited. Subsequently, Sykes filed a petition for a writ of habeas corpus in the federal court, asserting that his statements were inadmissible because he had not understood his *Miranda* warnings. The District Court granted the writ, but this Court reversed, holding that the District Court should never have entertained Sykes' habeas petition at all. Rejecting "the sweeping language of *Fay* v. *Noia*," the Court concluded that *Fay*'s deliberate bypass test paid insufficient respect to the State's interests—viewed through the prism of federalism and comity concerns—in seeing its procedural default rules enforced. 433 U. S., at 87–88. The Court held instead that federal courts should decline to exercise their habeas jurisdiction absent a stronger showing by the prisoner that federal review is appropriate. Specifically, the Court held that federal habeas review of a procedurally defaulted claim should ordinarily be withheld unless the peti-

tioner shows "cause" for the procedural default and "prejudice" to his case from the underlying error. *Id.*, at 87.

The Court left open "for resolution in future decisions the precise definition of the 'cause'-and-'prejudice' standard," *ibid.*, noting only that "it is narrower than the standard set forth," *ibid.*, in *Fay* v. *Noia*, and suggesting that, as such, it would provide a better balance between the interests of a petitioner and those of the State, *id.*, at 88–91. I thought then that *Wainwright* v. *Sykes* was wrongly decided, and I continue to believe so for the reasons I stated there and in subsequent cases. See *Wainwright* v. *Sykes*, *supra*, at 99–118 (BRENNAN, J., dissenting); *Engle* v. *Isaac*, 456 U. S., at 137–151 (BRENNAN, J., dissenting); *United States* v. *Frady*, 456 U. S. 152, 178–187 (1982) (BRENNAN, J., dissenting). But at least the Court in *Wainwright* v. *Sykes* was prudent enough to leave the task of defining "cause" and "prejudice" to subsequent cases. For, to the extent that the availability of federal habeas review of procedurally defaulted claims turns on the cause-and-prejudice test,[3] then it is in the context of giving that test meaning that the Court must undertake the careful evaluation of the interests of the State and defendant that is required to determine whether federal courts may properly decline to exercise jurisdiction conferred upon them by Congress.

## II

### A

The particular question we must decide in this case is whether counsel's inadvertent failure to raise a substantive claim of error can constitute "cause" for the procedural de-

---

[3] Although *Wainwright* v. *Sykes* held only that the cause-and-prejudice test should be applied to violations of contemporaneous-objection rules, subsequent cases have extended the cause-and-prejudice test well beyond that narrow holding. See *Engle* v. *Isaac*, 456 U. S. 107 (1982); *United States* v. *Frady*, 456 U. S. 152 (1982); *Reed* v. *Ross*, 468 U. S. 1 (1984). It is still an open question "whether counsel's decision not to take an appeal at all"—the question presented on the facts of *Fay* v. *Noia*—is governed by the deliberate bypass rule or the cause-and-prejudice test. *Ante*, at 492.

fault. *Wainwright* v. *Sykes* held that defense counsel's tactical decision to bypass a state procedure does not constitute cause. 433 U. S., at 91, n. 14; see also *ante*, at 485; *Reed* v. *Ross*, 468 U. S., at 13. That result may arguably be defended on grounds similar to those which justified the result in *Fay* v. *Noia, i. e.*, that the deterrent interests underlying the State's procedural default rule are at their apogee where counsel's decision to bypass a state procedure is deliberate. However, to say that the petitioner should be bound to his lawyer's tactical decisions is one thing; to say that he must also bear the burden of his lawyer's inadvertent mistakes is quite another. Where counsel is unaware of a claim or of the duty to raise it at a particular time, the procedural default rule cannot operate as a specific deterrent to noncompliance with the State's procedural rules. Consequently, the State's interest in ensuring that the federal court help prevent circumvention of the State's procedural rules by imposing the same forfeiture sanction is much less compelling. To be sure, applying procedural default rules even to inadvertent defaults furthers the State's deterrent interests in a general sense by encouraging lawyers to be more conscientious on the whole. However, as the Court has pointed out in another context, such general deterrent interests are weak where the failure to follow a rule is accidental rather than intentional. See *United States* v. *Leon*, 468 U. S. 897, 908–917 (1984).

I believe that this incremental state interest simply is not sufficient to overcome the heavy presumption against a federal court's refusing to exercise jurisdiction clearly granted by Congress. This is especially so where the petitioner has satisfied the prejudice prong of the *Wainwright* v. *Sykes* test. That is, where a petitioner's constitutional rights have been violated and that violation may have affected the verdict, a federal court should not decline to entertain a habeas petition solely out of deference to the State's weak interest in punishing lawyers' inadvertent failures to comply with state

procedures. I would therefore hold that "cause" is established where a procedural default resulted from counsel's inadvertence, and I respectfully dissent from the Court's decisions in both *Murray* v. *Carrier*, No. 84–1554, and *Smith* v. *Murray*, No. 85–5487.[4]

B

Even if I did not believe that this difference in the *State*'s interests was sufficient to require holding that counsel's inadvertence constitutes cause, there is an additional difference in the *defendant*'s interests that compels this conclusion in *Smith* v. *Murray:* the fact that it is a capital case. To the extent that, as I have argued above, the definition of cause requires consideration of the interests of the defendant as well as of the State, it strikes me as cruelly unfair to bind a defendant to his lawyer's inadvertent failure to prevent prejudicial constitutional error—thus barring access to federal

---

[4] I do not mean to suggest by this that I accept the Court's decision in *Wainwright* v. *Sykes* or that I think that a habeas petitioner should ever have to show "cause" and "prejudice" to gain access to the federal courts under § 2254. As noted above, I continue to believe that *Wainwright* v. *Sykes* represented an illegitimate exercise of this Court's very limited discretion to order federal courts to decline to entertain habeas petitions. My point is simply that, even accepting the validity of *Wainwright*'s "cause and prejudice" test, the Court must still carefully balance the relevant interests, and, when this balancing is done properly, it is apparent that counsel's inadvertence should constitute "cause." Accordingly, I would affirm the decision of the Court of Appeals in *Murray* v. *Carrier*.

While reversing the holding of the Court of Appeals that counsel's inadvertence establishes "cause," the Court goes on to declare that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal court may grant the writ even in the absence of a showing of cause for the procedural default." *Ante*, at 496. Under such circumstances, the Court explains, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Ante*, at 495 (quoting *Engle* v. *Isaac*, *supra*, at 135). Although I believe that principles of "comity" and "finality" yield upon far less than a showing of actual innocence, because this inquiry represents a narrowing of the "cause and prejudice" test, I agree that it is proper.

review—where the consequence to the defendant is death. With the understanding that "execution is the most irremediable and unfathomable of penalties; that death is different," *Ford* v. *Wainwright, ante,* at 411; see also *Woodson* v. *North Carolina,* 428 U. S. 280, 305 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.), this Court has been particularly scrupulous in demanding that the proceedings which condemn an individual to death not be marred by constitutional error. Against this background of special concern, "comity" and "federalism" concerns simply do not require such an exercise of this Court's discretion in capital cases.