**Daryl DRENNAN, Plaintiff,**

v.

**Edward HARGETT and Mike Moore, Defendants.**

Civ. A. No. 2:93CV274(P)(S).

United States District Court, S.D. Mississippi, Hattiesburg Division.

May 19, 1994.

Daryl Drennan, pro se.

Jo Anne McLeod, MS Atty. Gen. Office, Jackson, for defendants.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This cause comes on this date to be heard upon the Report and Recommendation of the United States Magistrate Judge, after referral for a hearing by this Court, and the Court, having considered the Report and Recommendation of the United States Magistrate Judge entered in this cause on or about December 16, 1993, as well as the objections made by the Plaintiff, and having reviewed the record *de novo,* and being fully advised in the premises, finds:

This is the second time that this Petitioner has been before this Court on Petition for habeas corpus relating to the same guilty plea. On July 5, 1989, this Court, through Judge Henry Wingate, entered an Order denying Petitioner's first Petition for federal habeas corpus. That Order was not appealed and thus became final.

In November of 1978, Petitioner at the age of 15 was charged with capital murder. He was represented by an attorney. He was certified to stand trial as an adult. He was ordered to undergo psychiatric evaluation. After Petitioner was screened at the state hospital, he was determined to be competent. In March of 1979, Petitioner pled guilty and received a life sentence. Since he pled guilty, there was no appeal. On August 8, 1982, when Petitioner was approximately 19 years of age he escaped. Some two years later when he was 21 or 22 he was convicted of two additional crimes in Nebraska.[1] In March of 1987, while incarcerated in Nebraska he filed the first of his federal petitions for writ of habeas corpus, attacking his guilty plea to the capital murder charge. He was returned to Mississippi to serve the sentence. The petition for habeas corpus that had been filed in federal court in Nebraska was referred to this Court for final disposition.

Plaintiff's initial *pro se* petition for habeas corpus was couched mostly in conclusory language. Petitioner alleged the following: that he pled guilty without understanding the nature of the charge or consequence of his plea, that his confession was coerced without his being allowed the presence of an attorney, failure of the state to disclose evidence favorable to Petitioner, ineffective assistance of counsel, and lack of due process. Petitioner's ineffective assistance of counsel claim was based upon allegations that his trial counsel filed no motions on Petitioner's behalf, that Petitioner pled guilty with no preliminary hearing, and that Petitioner had no arraignment on the charges as to which he pled guilty.[2]

The Report and Recommendation of the Magistrate Judge which was adopted by the District Court in denying Petitioner's first application for federal habeas corpus found and recommended:

In the present case, petitioner offers no explanation at all for his failure to seek post-conviction relief. As noted earlier, petitioner escaped prior to being housed at the Mississippi State Penitentiary. According to his application for writ of habeas corpus, he was convicted of unspecified charges in Dawson and Lancaster Counties in Nebraska in January 1985. He did not file the present petition until March 1987. Obviously, petitioner's decision to attack his Mississippi conviction was prompted by his reincarceration. These are not the circumstances under which this Court could

1. Petitioner's first Petition for federal habeas corpus reveals that he was sentenced to five to ten years in Dawson County, Nebraska, on January 1, 1985, and sentenced to one year from Lancaster County, Nebraska, on January 5, 1985.

2. Petitioner alleges that he was arraigned for attempted murder, but convicted for capital murder. Petitioner misstates the facts when he says he was convicted. Petitioner was not convicted. Petitioner pled guilty. Petitioner fails to understand that when he pled guilty that was *at an arraignment* on the murder charge. Obviously the victim died between Petitioner's arraignment on the attempted murder charge and Petitioner's second arraignment on the capital murder charge.

find sufficient cause to excuse his failure to timely pursue adequate state post-conviction relief. Petitioner chose to defy the law by escaping rather than attacking the conviction through legitimate and legal avenues. Further, the passage of the Post–Conviction Relief Act offered petitioner an additional opportunity to challenge the conviction as it became law in April 1984 and thereby gave him until April 1987 to file for relief. Although incarcerated for two years prior to the running of the time period, petitioner made no effort to challenge the conviction. His failure to comply cannot be considered excusable neglect under these circumstances. Accordingly, petitioner has failed to demonstrate sufficient cause for failing to timely pursue adequate state post-conviction relief and he is thereby barred from seeking federal habeas relief by virtue of his procedural default.[3]

Almost two years after Petitioner's first Petition for federal habeas corpus was dismissed, he filed for post-conviction relief in state court under the Mississippi Uniform Post–Conviction Collateral Relief Act. Both the state trial court and the Mississippi Supreme Court found that Petitioner failed to file for relief within the statutory time period, and dismissed Petitioner's request for post-conviction relief.

In September of 1993, after Petitioner had failed in his effort to obtain state post-conviction relief because he failed to timely pursue the available state remedy, he filed the Petition now before this Court. In this second Petition for federal habeas corpus relief Petitioner states: "Petitioner's claim of Denial of Access to the Courts is the only claim that was not presented in the original actions attacking said conviction. . . ." His denial of access of the courts seems to be based on his allegation that "[p]etitioner was 15 years of age at the time of arrest and conviction, without complete basic education and no knowledge of the legal system. . . . Petitioner will further show this Court that he was denied access to the courts by the representatives of previous actions filed by Petitioner, in the form of using the Petitioners [sic] lack of legal knowledge, materials, representation and expertise against him."

Although Petitioner states that all other grounds raised in the instant Petition were raised in his first Petition for federal habeas corpus, he does go into much more detail in his second Petition. In addition to the allegation of denial of access to the courts, Petitioner alleges that his defense counsel was ineffective[4] for failure to request discovery from the state, was ineffective for failure to submit a motion to quash the indictment because the indictment was not accompanied by a statutorily required affidavit of the foreman, and was ineffective for failing to raise the issue that the minutes of the Court at the term in which the grand jury indicted Petitioner were not signed by the presiding judge, rendering such indictment void. Petitioner further alleges ineffective assistance of counsel for counsel's failing to request that defendant's statement and evidence coerced by police investigators be suppressed, for counsel's failing to raise the issue of defendant's failure to receive the Miranda warning, for counsel's coercing Petitioner to plead guilty to the charge of capital murder (Petitioner alleges that he was told he would get the gas chamber if he did not plead guilty), and that the trial court was in error for failing to advise the Petitioner of the consequences and loss of rights by entering a guilty plea and failing to record the plea and sentencing hearing.[5]

---

3. The Post–Conviction Relief Act referred to by Magistrate Judge Singletary is found in MISS. CODE ANN. § 99–39–5 (1984). It became law in April of 1984. Petitioner had three years from April of 1984 to seek state relief as to his March 1979 plea of guilty.

4. The Court notes that defense counsel for Petitioner served as district attorney for the judicial district in which Petitioner pled guilty for a four-year term commencing less than one year after he represented Petitioner.

5. Petitioner repeatedly refers to his "conviction," although he pled guilty. He complains about the unconstitutionality of his confession, but his confession would not have been introduced since he pled guilty. Defendant refers to Exhibit One (1) Memorandum "B" as proof that the minutes of the Court were not signed by the Judge, the grand jury was not sworn and the indictment was not accompanied by an affidavit of the foreman of the grand jury. Exhibit One (1) to Memorandum "B" is simply the front page or the charging part of the indictment. This Exhibit

Respondent moved to dismiss "pursuant to Rule 9(b) of the Rules Governing Section 2254" on the basis (1) that this is a "second or successive petition" and that "it fails to allege new or different grounds for relief," and (2) that if new grounds are alleged, this is a "second or successive Petition" and "failure of the petitioner to assert those grounds in a prior petition" constitutes an "abuse of the writ."

The Report and Recommendation of Magistrate Judge Sumner as to the current Petition finds and recommends:

> This Court has previously held that petitioner: (1) failed to demonstrate sufficient cause for his failure to timely pursue state post-conviction relief in attacking the conviction which is the subject of the instant petition, and (2) was therefore barred from seeking federal habeas relief because of his procedural default. Petitioner did not appeal this ruling, and, instead, belatedly chose to file an action under the Mississippi Post–Conviction Relief Act, only to find, as this Court had previously held, that he was time barred from pursuing post-conviction relief in state court. We find that this Court's previous ruling on this issue is final and conclusive. Petitioner has failed to demonstrate any basis upon which this court's prior judgment should be set aside. Even assuming that the previous judgment was not binding upon petitioner however, because of petitioner's procedural default, he has still failed to exhaust his state remedies. Moreover, in his response to respondents' motion to dismiss, he has failed to demonstrate sufficient cause for his failure to do so. Accordingly, this Court may not grant federal habeas relief.

Petitioner objects to the Report and Recommendation of Magistrate Judge Sumner, on the ground that:

> reflects that the indictment was duly signed by the foreman of the grand jury and the district attorney. Exhibit One does not prove any of the things which Petitioner says that it proves. All of the matters which Petitioner says are established by Exhibit One to Memorandum "B" would appear elsewhere in the record not on the front page of the indictment. The record does not establish that the Court did not properly advise Petitioner of his rights before accepting his guilty

> [T]he reviewing Courts of each action continually state that the Petitioner has failed to demonstrate sufficient cause for his failure to timely pursue state post-conviction relief in his attack of conviction and sentence, and/or failure to exhaust state remedies, but failed to recognize that the Petitioner was at the age of fifteen (15) when he received conviction and sentence under attack and was unaware of any form of Constitutional violations regarding said conviction and sentence until a period of six (6) years had passed.

## I. CONTROLLING LAW ON HABEAS CORPUS.

In *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Supreme Court enunciated what this Court understands to be the controlling law as to this case, and traced the history of habeas corpus in the United States. The Court noted some legislative expansion of the writ, but observed:

> For the most part ... expansion of the writ has come through judicial decision-making.

*Id.* at 478, 111 S.Ct. at 1462 (citation omitted). In tracing the history of the writ the Court further observed:

> At common law, res judicata did not attach to a court's denial of habeas relief....

> As appellate review became available from a decision in habeas refusing to discharge the prisoner, courts began to question the continuing validity of the common-law rule allowing endless successive petitions.

*Id.* at 479, 111 S.Ct. at 1462 (citation omitted).

The Court commented on a 1966 amendment by Congress stating:

> plea. What the record does establish is that since there was no direct appeal, the record of Plaintiff's guilty plea was not transcribed by the court reporter some fifteen years ago. The length, detail and contents of Petitioner's *pro se* petition indicate that he has spent hours in a prison law library. He has learned a great deal about constitutional law, but in his pleadings he misapplies much of what he relies on.

The amendment was an attempt to alleviate the increasing burden on federal courts caused by successive and abusive petitions by "introducing a greater degree of finality of judgments in habeas corpus proceedings."

*Id.* at 485, 111 S.Ct. at 1465 (citations omitted).

Because of the historical changes and the complexity of the subject, the Court has not "always followed an unwavering line in its conclusions as to the availability of the Great Writ."

*Id.* at 489, 111 S.Ct. at 1467 (citation omitted).

The Court considered the test that should apply when the question of "abuse of writ" is raised and analogized as to the "cause and prejudice" test that is applied in cases in which the Petitioner has failed to exhaust state remedies. The Court concluded:

The doctrines of procedural default and abuse of the writ implicate nearly identical concerns flowing from the significant costs of federal habeas corpus review. To begin with, the writ strikes at finality. One of the law's very objects is the finality of its judgments. Neither innocence nor just punishment can be vindicated until the final judgment is known. "Without finality, the criminal law is deprived of much of its deterrent effect...." And when a habeas petitioner succeeds in obtaining a new trial, the "'erosion of memory' and 'dispersion of witnesses' that occur with the passage of time," ... prejudice the government and diminish the chances of a reliable criminal adjudication.... Worthy's inconsistent and confused testimony in this case demonstrates the obvious proposition that fact-finding processes are impaired when delayed.

*Id.* at 490–91, 111 S.Ct. at 1468.

Commenting upon the adverse affect that improvident issuance of the writ can have, the Court stated:

Our federal system recognizes the independent power of a State to articulate societal norms through criminal laws; but the power of a State to pass laws means little if the State cannot enforce them.

Habeas review extracts further costs. Federal collateral litigation places a heavy burden on scarce federal judicial resources, and threatens the capacity of the system to resolve primary disputes.

If "[c]ollateral review of a conviction extends the ordeal of trial for both society and the accused," ..., the ordeal worsens during subsequent collateral proceedings. Perpetual disrespect for the finality of convictions disparages the entire criminal justice system....

"There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility."

If reexamination of a conviction in the first round of federal habeas stretches resources, examination of new claims raised in a second or subsequent petition spreads them thinner still.... The phenomenon calls to mind Justice Jackson's admonition that "[i]t must prejudice the occasional meritorious application to be buried in a flood of worthless ones."

*Id.* at 491–92, 111 S.Ct. at 1469 (citations omitted). The Court noted that such an interpretation would not prevent federal courts from being able to act when a "fundamental miscarriage of justice" is implicated.

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*Id.* at 494, 111 S.Ct. at 1470 (citation omitted).

The miscarriage of justice exception to cause serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty," ... guaranteeing that the ends of justice will be served in full.

*Id.* at 495, 111 S.Ct. at 1471 (citation omitted). The Court concluded:

The cause and prejudice standard should curtail the abusive petitions that in recent years have threatened to undermine the integrity of the habeas corpus process. *"Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus."* ... The writ of habeas corpus is one of the centerpieces of our liberties. "But the writ has potentialities for evil as well as for good. Abuse of the writ may undermine the orderly administration of justice and therefore weaken the forces of authority that are essential for civilization."

*Id.* at 496, 111 S.Ct. at 1471 (citations omitted) (emphasis added).

McCleskey cannot demonstrate that the alleged Massiah violation caused the conviction of an innocent person.

The history of the proceedings in this case, and the burden upon the State in defending against allegations made for the first time in federal court some nine years after the trial, reveal the necessity for the abuse-of-the-writ doctrine. The cause and prejudice standard we adopt today leaves ample room for consideration of constitutional errors in a first federal habeas petition and in a later petition under appropriate circumstances. Petitioner has not satisfied this standard for excusing the omission of the Massiah claim from his first petition. The judgment of the Court of Appeals is affirmed.

*Id.* at 502–03, 111 S.Ct. at 1475 (citation omitted).

## II. CAUSE AND PREJUDICE AS TO PETITIONER'S FAILURE TO EXHAUST STATE REMEDIES.

■ Petitioner has had ample opportunity to come forward with any "external factor" that prevented him from exhausting his state remedies. He raised no issue in his first Petition for federal habeas corpus that would constitute "cause." And in this case in neither his response to the Respondent's Motion to Dismiss, nor his objections to the Magistrate Judge's Report and Recommendation, has Petitioner brought forward any reason for failing to exhaust his state remedies other than his allegation that "Petitioner was not aware of *any* violations against his rights concerning his conviction and sentence for a period of eight (8) years and was only made aware of such through discussions with a inmate paralegal in 1986." (emphasis in original). By 1986, Petitioner was about 23 years of age. He still had until April 1987 to timely file for relief under the Mississippi Post–Conviction Statute; he failed to do this. In the case of *U.S. v. Flores,* 981 F.2d 231 (5th Cir.1993), the Fifth Circuit addressed the issue of "cause and prejudice" in regard to allegations very similar to those now made by Petitioner.[6]

Flores asserts that, at the time of his first motion, he did not appreciate the legal significance of facts supporting the claims which he now raises. However, Flores' ignorance does not constitute cause under *McCleskey,* because *it was not an objective factor external to Flores' defense....* Neither Flores' illiteracy, nor his deafness, nor his lack of training in the law amounts to cause either, because none of these factors was external to Flores' defense. Furthermore, Flores' pro se status does not amount to cause for his failure to raise the claims in his first motion.... Because Flores has not shown cause for his failure to raise his claims in his first motion, we need not consider whether Flores has shown prejudice. Although Flores has not shown cause for failing to raise his claims in his first motion, those claims will be heard if failing to do so would result in a fundamental miscarriage of justice. Such *a miscarriage of justice would be indicated if a constitutional violation probably caused Flores to be convicted of a crime of which he is innocent.*

*Id.* at 236 (citing *McCleskey,* 499 U.S. at 493–502, 111 S.Ct. at 1470–74) (emphasis added).

---

**6.** In *Flores* the Court was addressing the issue of "abuse of writ" for Flores' failure to raise his claims in his first federal petition for habeas corpus. The Supreme Court in *McCleskey, supra,* held that the same test should apply to the issue of "abuse of writ" as had traditionally been applied to failure to exhaust state remedies. Consequently the reasoning of the *Flores* court is clearly applicable in this case, both as to Drennan's failure to exhaust his state remedies and for his failure to assign grounds in his first federal petition for habeas corpus.

## III. CAUSE AND PREJUDICE AS IT APPLIES TO PETITIONER'S FIRST PETITION FOR HABEAS CORPUS IN FEDERAL COURT.

■ Petitioner acknowledges that all of the issues raised in his current Petition for habeas corpus were raised in his previous petitions, both state and federal, except the issue of access to the courts. However, this Court, in ruling on Petitioner's first federal habeas corpus Petition, very definitely ruled on Petitioner's claim of access to the courts when it found that he had access to the state courts, Petitioner failed to exhaust those remedies, and offered no justifiable reason for such failure. Petitioner misinterprets the meanings of "access to the courts." Further, Petitioner is clearly barred from relitigating issues adjudicated in his first Petition for federal habeas corpus.

■ Even if Petitioner raises new issues in his current Petition, nevertheless, he is still barred because of his failure to allege those ground in his first Petition. *McCleskey, supra,* held that the "cause and prejudice" test previously applied to cases in which Petitioner had not exhausted state remedies likewise applies to the issue of "abuse of writ" when a petitioner files a second or successive federal petition for habeas corpus. As already mentioned Petitioner does not meet the "cause and prejudice" test. This applies not only to his failure to exhaust his available state remedies, but also to his failure to raise grounds in the first federal Petition since Petitioner alleges the same reasons as to both. *See Flores, supra.*

## IV. MISCARRIAGE OF JUSTICE.

■ As the cases note there is one "narrow exception" to the "cause and prejudice" test applicable to both the exhaustion of state remedies and the "abuse of writ" rule to be applied to second or successive petitions for habeas corpus in federal court; that narrow exception is the "miscarriage of justice" exception.

In *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986), the Supreme Court held:

Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas corpus may grant the writ even in the absence of a showing of cause for the procedural default.

In *U.S. v. Flores,* 981 F.2d 231 (5th Cir. 1993), the Fifth Circuit in commenting on the *McCleskey* decision noted "under *McCleskey,* a second or subsequent habeas corpus petition which raises a claim for the first time is generally regarded as an abuse of the writ." *Id.* at 234 (citation omitted).

In *Morris v. Slappy,* 461 U.S. 1, 15, 103 S.Ct. 1610, 1618, 75 L.Ed.2d 610 (1983), the Court observed:

Over 75 years ago, Roscoe Pound condemned American courts for ignoring "substantive law and justice," and treating trials as sporting contests in which the "inquiry is, Have the rules of the game been carried out strictly?" Pound, the Causes of Popular Dissatisfaction With the Administration of Justice, 29 ABA Ann. Rep. 395, 406 (1906). A criminal trial is not a "game." . . .

## V. PETITIONER'S CONSTITUTIONAL RIGHTS VERSUS THE RIGHTS OF SOCIETY.

It has been more than fifteen years since Petitioner pleaded guilty to capital murder. In neither his first nor his second federal Petition for habeas corpus does Petitioner *allege* that he is innocent, much less demonstrate that he is innocent. In a conclusory fashion Petitioner now raises serious and important procedural constitutional issues. However, Petitioner as would be expected, and as is permissible, raises these constitutional issues from only one perspective. He does not address how his belated attempt at habeas corpus based upon procedural constitutional matters, not the issue of guilt or innocence, affects either the judicial system or society as a whole.

This Court sympathizes with a 30 or 31 year old inmate serving a life sentence for a crime (capital murder) which occurred when Petitioner was 15 years of age (and as to which he pled guilty). But this Court also

sympathizes with the victim who will never breathe another breath of air and for the family of the victim who lost all earthly contact with a loved one. Law abiding members of society also have rights. The family of a murder victim has a right not to be put through a needless trial more than fifteen years after the crime has occurred. Law abiding citizens have a right to have law enforcement officers devoting their efforts to the prevention of crime rather than defending needless and unreasonable habeas corpus proceedings many years after a defendant has pled guilty.

Although each specific right of the law abiding citizens of the United States is not enumerated in the Constitution, these rights nevertheless exist. The same Bill of Rights which Petitioner invokes provides "[t]he enumeration in the Constitution of certain rights shall not be construed to deny or disparage *others retained by the people."* U.S. CONST. amend. IX. (emphasis added). "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. Thus, society as a whole retains many rights not enumerated in the Constitution. Although one cannot say that these rights are paramount to Petitioner's constitutional rights, for they are not, nevertheless they are numerous and they are just as important as are Petitioner's constitutional rights.

In the Declaration of Independence the Founding Fathers referred to "certain unalienable Rights, that among these are Life, Liberty and the Pursuit of Happiness." Certainly, these rights were among those "retained by the people...." DECL. OF IND. Further proof that life, liberty and the pursuit of happiness are among the rights retained by the people under the Constitution is the reasoning set out in the Declaration of Independence "[t]hat to secure these Rights, Governments are instituted among Men...." *Id.* When the Constitution was adopted that was exactly what the Founding Fathers were doing; they were instituting a government among men.

Even though the Founding Fathers feared the suppression of individual rights, hence,

the Bill of Rights, the Bill of Rights did not in any way repeal the original Constitution or its Preamble which had already been duly adopted by the States. The Constitution was adopted to "... establish *justice,* insure *domestic tranquility* ... promote the *general welfare,* and secure the *blessings of liberty*...." U.S. CONST. Pmbl. (emphasis added).

It is clear that there is a certain amount of tension between the Bill of Rights (which basically protects individual or minority rights from the excesses of government or the excesses of the majority) and the Preamble. Although the Preamble does not grant power to the federal government since ours is a government of limited power, the Preamble does address the overall purposes, the overall reason for going through the process of adopting a Constitution, and thus it is clearly useful in interpreting individual articles or sections. A criminal justice system that does not protect law abiding citizens from violent criminals cannot be said to provide "justice," certainly does not "insure domestic tranquility" nor "promote the general welfare," and it obviously contravenes the security of the "blessings of liberty." Thus, the Preamble clearly indicates that constitutional rights of those charged or convicted of crimes should not be so construed as to unnecessarily and unreasonably destroy the rights retained under the Constitution by law abiding citizens and society in general.

The Fourth Amendment speaks of "[t]he right of the people to be secure in their persons, [and] houses...." U.S. CONST. amend. IV. Although the Amendment refers to security from "unreasonable searches and seizures" it assumes that being secure in their "persons" and in their "houses" is a basic right of the American people. *Id.* The Founding Fathers wanted to insure that "unreasonable searches and seizures" did not invade the "basic expectation of security in one's home" or "person." Violence and crime can destroy the security one has in one's home or person just as surely as unreasonable searches and seizures. Polls clearly indicate that people today do not feel secure, either in their persons or in their homes. They fear violent crime.

The Sixth Amendment guarantees a "speedy and public trial" for those accused of crimes. U.S. CONST. amend. VI. Although Congress, in recent years, has passed a Speedy Trial Act as to the actual trial of criminal matters, the review process as to habeas corpus drags on. Habeas corpus proceedings are brought years after the crime, years after the trial. Often times evidence is gone and witnesses are deceased or otherwise unavailable.

While the constitutional rights of the masses of the law abiding citizens of America cannot and should not be used to trample upon the very important constitutional rights of those charged with crimes, neither should the constitutional rights of those charged or convicted of crime be used to trample upon the rights of the law abiding citizens retained under and by the Constitution.

For more than a generation we have lived in a nation where society in general and the judiciary in particular have vigorously championed and proclaimed personal and individual rights. Emphasis on personal and individual responsibility has not been nearly so vigorously proclaimed or championed. Is it a coincidence that during this same time period there has been an unparalleled surge in violent crime? America has become one of the most violent civilizations not only of the world, but in history. There is an old adage proven by time and experience that swift and certain punishment can be an effective deterrent to crime. Punishment that is neither swift nor certain is not an effective deterrent to crime.

Although the decided trend in the judicial system today is directed more toward the issue of guilt or innocence than in the past, our criminal system today is still far from providing "swift and certain punishment" for criminal actions. It is routine for federal courts to be resolving habeas corpus issues

ten, fifteen, or even more years after a heinous crime has been committed. There will always be exceptional cases where this will be necessary to protect individual persons convicted of crimes, to prevent a "manifest miscarriage of justice." But it should not be happening routinely.

And it is happening routinely, primarily as a result of judicially created additions to habeas corpus since 1960. In addition to expanding the number of cases subject to federal habeas corpus, the federal courts also considerably expanded constitutional rights of inmates in regard to their conditions of confinement. In 1960, 1,295 cases were filed in the federal courts by prison inmates. This constituted 2.1 percent of the cases filed that year in the federal courts. In 1993, 53,713 cases were filed by prison inmates in federal courts, constituting 23.3 percent of the federal cases filed.[7] Statistical Division of Adm. Office of U.S. Courts.

Long delays in the final resolution of criminal cases undermines confidence in the judicial system. A democracy cannot last indefinitely if there is not confidence in its judicial system. Petitioner is being punished for a crime to which he pled guilty. He does not today assert his innocence. Yet he comes back into Court, more than fifteen years after the crime occurred, seeking habeas corpus relief for a second time, not on the basis of the fact that he is innocent, but for alleged procedural constitutional deficiencies which he could have raised in state court, but didn't and which he either raised or could have raised in a previous habeas corpus proceeding brought in this same federal court.

While it is true that under the above analysis the Petitioner may have lost the right to attempt to prove that he lost certain procedural constitutional rights, he did so by his own inaction, in regard to a crime, as to

---

7. This is not intended to suggest that inmates should not be allowed access to federal courts through habeas corpus or that they should not be given basic constitutional protection as to conditions of their confinement. It is to suggest that the courts have imposed upon the penal system and state governments (as well as upon the court system itself) enormous expenditures of time and resources, both of which require funding, to protect these rights as judicially defined. Since governments, federal, state, and local, have limited resources, that means that funds that could be allocated to prevention of crime are being utilized in defending expanded habeas corpus and expanded prisoner rights complaints. The Courts are poorly equipped (in fact there is no procedure whatsoever) to apportion scarce resources between undisputedly important priorities. It is clear that the courts need to exercise their power with a certain amount of restraint.

which he pled guilty and even today does not challenge his guilt. The victim in this case lost his right to "life ... and the pursuit of happiness." The victim's loss of his rights, retained by the Constitution, was not occasioned by his own inaction, but rather by Petitioner's deliberate, although youthful, action. In this light, Petitioner cannot legitimately claim that the system has treated him unfairly. It is tragic that Petitioner did not learn as much about individual and personal responsibility some fifteen or more years ago as he seems to know about constitutional rights today.

## VI. FINALITY OF HABEAS PROCEEDINGS.

Because Plaintiff is a *pro se* litigant and it is obvious he does not understand everything that he argues about the law, the Constitution, and Court proceedings and records, this Court has gone into more detail in its ruling than ordinary. This Court has attempted to write this opinion so that Petitioner can understand the reasoning as well as the effect of this decision. The Order of this Court entered by Judge Wingate on July 5, 1989, on Petitioner's first Petition for habeas corpus is conclusive. It is final. Petitioner is not entitled to habeas corpus under this Petition. He is not entitled to habeas corpus in the future unless he can demonstrate his probable innocence. Accordingly, Petitioner is directed to file no further petitions before this Court for writ of habeas corpus unless he can make such a demonstration of "probable innocence."

## VII. CONCLUSION.

Based upon the above, it is ordered that the Report and Recommendation of United States Magistrate Judge James Sumner entered on or about December 16, 1993, be and the same is hereby accepted and adopted. For the reasons stated in the Report and Recommendation of the Magistrate Judge as well as the reasons set out in this Memorandum Opinion and Order addressing the objections of Petitioner, the Petition for writ of habeas corpus filed in this cause is hereby dismissed with prejudice. A separate judgment will be entered in accordance with this Order as required by Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED.