**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 97-10851
_____

DOMINGO CANTU, JR.,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director,
Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(94-CV-1397-H)
_____
August 18, 1999

Before JOLLY, WIENER, EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge.[*]

In his pre-AEDPA[1] quest for habeas corpus relief, Petitioner-Appellant Domingo Cantu, Jr., asks us to grant a certificate of probable cause (CPC) so that he can appeal from the district court's denial of habeas relief. Cantu insists that he has made a substantial showing of the denial of a federal right, which he must do to our satisfaction if we are to grant a CPC. Cantu has specified errors in both the guilt-innocence and punishment phases

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]  Anti-terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (1994 & Supp. 1998).

of his state court trial, in which he was convicted and sentenced to death for the brutal rape and murder of a 94-year-old woman.[2]

From our examination of the records of Cantu's state and federal court proceedings, viewed in light of the legal arguments advanced by able counsel in their appellate briefs and in their arguments to this panel, we are satisfied that Cantu has failed to demonstrate that the issues on which he bases his claims of the denial of federal rights are "debatable among jurists of reason; that a court <u>could</u> resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"[3]  For the reasons briefly set forth below, therefore, we affirm the district court's dismissal of his petition for habeas relief and deny Cantu's application for CPC.

I.

FACTS AND PROCEEDINGS

The homicide that occurred on June 25, 1988, during the course of the aggravated sexual assault referred to above, led to the August 26, 1988 indictment of Cantu in Dallas County, Texas.  He was tried and convicted by a jury in late October 1988, and on November 1, 1988, the same jury affirmatively answered the two special sentencing issues under Article 37.071(b) of the Texas Code of Criminal Procedure, leading to imposition of the death penalty

_____

[2]    The gruesome details of the crime are set forth in <u>Cantu v. State</u>, 842 S.W.2d 667, 674-76 (Tex. Crim. App. 1992).

[3]    <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983) (quoting <u>Gordon v. Willis</u>, 516 F. Supp. 911, 913 (N.D. Ga. 1980)) (emphasis in <u>Gordon</u>).

by the state court. In June 1992, the Court of Criminal Appeals of Texas affirmed Cantu's conviction and sentence, and in September of that year denied rehearing. The United States Supreme Court denied <u>certiorari</u> in June 1993.

Cantu instituted state habeas corpus proceedings in April 1994, and the Court of Criminal Appeals of Texas denied such relief on the basis of the findings of fact and conclusions of law of the trial court. After his execution was scheduled Cantu instituted these proceedings in federal district court, which stayed the execution. The district court considered the recommendation of the magistrate judge as well as Cantu's objections, then adopted the former. Cantu timely filed a notice of appeal and applied to the district court for a CPC, which was denied some ten days later. He now applies to us for a CPC to appeal the district court's denial of habeas relief.

II.

<u>ANALYSIS</u>

A.    <u>Guilt-Innocence Phase</u>

Presumably in light of the plethora of evidence of guilt, Cantu has not challenged the sufficiency of the evidence supporting his conviction. Rather, he ties his insistence that he has made a substantial showing of the denial of a federal right in the guilt-innocence phase to allegedly reversible errors in his trial court's conduct of the jury trial. We address in turn each of those allegations.

3

1.    Batson Claim[4]

Cantu asserts that a Batson Equal Protection Clause violation occurred when the state trial court allowed the prosecution to use a peremptory challenge to exclude venireperson Sanchez, an Hispanic, from the jury.  In proffering race-neutral reasons for that peremptory challenge, the prosecution listed seven[5] and expressed reliance on the cumulative effect of all those reasons. The trial court credited the totality of those reasons as well as Ms. Sanchez's questionnaire and the court's observation of her demeanor when responding to voir dire questions, and found the prosecution's position credible.[6]  In response to Cantu's complaint that other unchallenged venirepersons had some of the same traits as ascribed to Ms. Sanchez, the prosecution noted —— and the court accepted —— that none had all seven traits and thus did not have the same totality of circumstances.  We perceive no substantial showing of the denial of a federal right in the trial court's disposition of Cantu's Batson objection to the state's peremptory challenge to selecting Ms. Sanchez.

2.    Denial of Challenge for Cause

The trial court denied Cantu's challenge of venireperson Jennings for cause based on his response to questions regarding proof of each element of the offense beyond a reasonable doubt. When the trial court denied Cantu's cause challenge he still had

---

[4]     Batson v. Kentucky, 476 U.S. 79 (1986).

[5]     See Cantu, 842 S.W.2d at 688.

[6]     Id. at n.16.

**4**

unused peremptory challenges, yet he did not expend one on Jennings. Under Texas law, this failure constituted procedural default by Cantu, eschewing preservation of the alleged error.[7] To obtain federal habeas review under prescribed circumstances — state procedural default coupled with refusal of the state courts to review his constitutional claim, for one — Cantu must demonstrate both cause and prejudice. Having failed to assert and prove either prong of the applicable test,[8] Cantu's claim of reversible trial court error in its ruling on the Jennings challenge is procedurally barred in federal court.[9] Even if that were not so, however, Cantu's claim would fail on its merits. Our review of the voir dire of Jennings by counsel for both parties and by the court satisfies us that the court did not err in concluding that Jennings's views would not prevent or substantially impair his performance of the duties of a juror pursuant to his oath and the instructions of the court. This entitles the trial court's conclusion to that effect, and the factual determinations on which it is grounded, to a presumption of correctness.[10]

3. Prosecution's Challenge for Cause

When the prosecution challenged venireperson Holloway for cause in light of this potential juror's voir dire testimony

---

[7]   Id. at 682-83.

[8]   Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977).

[9]   Carrier, 477 U.S. at 485; Sykes 433 U.S. at 87.

[10]   28 U.S.C. § 2254(d) (Supp. 1998).

**5**

regarding the requirement that the state prove its case beyond a reasonable doubt, the trial court granted the challenge over Cantu's objection. The gravamen of the state's challenge was Holloway's assertion that she would require proof to an absolute certainty, which the prosecution correctly classified as a more stringent burden than beyond a reasonable doubt. A reading of all the questions propounded to Holloway by the prosecution, the defense, and the court discloses some answers that, when read out of context, are facially inconsistent and susceptible of interpretation of her acceptance of the appropriate level of proof. When the entire colloquy is read in context, however, the trial court's ruling comes across as clearly irreversible. We need look no further than the final exchange between the court and Holloway to be convinced that its grant of the prosecution's challenge for cause was not erroneous, particularly when viewed under the presumption of correctness of § 2254(d):

> Q. And all I need to know from you, very simply is, in a death penalty case, which would you require, proof beyond a reasonable doubt, which is what the law requires, or would you require, since it is a death penalty case, absolute certainty, proved beyond any doubt whatsoever?
>
> A. I would require absolute certainty.[11]

B. <u>Punishment Phase</u>

---

[11] <u>Cantu v. State</u>, 842 S.W.2d 667, 681 (Tex. Crim. App. 1992).

**6**

Cantu mounts a stereotypical punishment phase challenge by asserting that the Texas statutory death penalty issues — deliberateness and probability of future violence[12] — were constitutionally inadequate to allow the jury fully to reflect any mitigating value of Cantu's voluntary intoxication at the time of the offense, which might have produced temporary insanity, or of his history of substance abuse. In addition to being instructed to answer the questions regarding the special issues of deliberateness and future violence, the jury was properly instructed on deciding the weight and credibility to give mitigating evidence and, specifically, on the consideration of temporary insanity and voluntary intoxication — and their definitions — in the sentencing calculus. Our review of the pertinent portions of the record on these matters demonstrates beyond cavil that the jury was able to give adequate mitigating effect to evidence of Cantu's intoxication, possibility of temporary insanity, and any aspect of his character, substance abuse record, and other circumstances advanced by Cantu in support of his request for a sentence less than death. Assuming without deciding that intoxication, and temporary insanity resulting therefrom, are constitutionally relevant mitigating factors, nothing in the jury instructions can be construed to have prevented the jury from giving mitigating effect to Cantu's drunken state, his history of substance abuse, or any other purportedly mitigating evidence adduced on his behalf.

---

[12] Tex. Crim. P. Code Ann. § 37.071(b) (West 1981 & Supp. 1999).

We perceive no violation of the Eighth Amendment in the conduct of the punishment phase of Cantu's trial.[13] Moreover, for whatever comfort it may provide, Cantu should know that even if we had concluded that there was some deficiency in the instructions and presentation of the proffered mitigating evidence that prevented or inhibited full application of its effects by the jury, we would hold any such error to be harmless. The value of the evidence of Cantu's intoxication and history of substance abuse so pales in comparison to the egregiousness of the crime and the plethora of punishment phase evidence supporting the death penalty that any deficiency affecting the jury's ability to give effect to such mitigating evidence would have been entirely harmless.

## III.

## CONCLUSION

We are completely satisfied that the district court committed no reversible error in denying habeas relief to Cantu or refusing to grant him a CPC. We therefore affirm all rulings of that court, and for the foregoing reasons, decline to issue Cantu a CPC. AFFIRMED; CPC DENIED.

---

[13] For Cantu to prevail on the basis for which his challenge to the mitigating effect aspect of the punishment phase is asserted would require the application of a new rule of law, which in turn would require the kind of retroactive application that is barred by Teague v. Lane, 489 U.S. 288, 310 (1989).

**8**