[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12168
Non-Argument Calendar
_____

D.C. Docket Nos. 9:11-cv-80918-DTKH,
9:03-cr-80094-DTKH-1

NATHAN DESHAWN FAUST,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 24, 2014)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Nathan Deshawn Faust, a federal prisoner, appeals the district court's denial

of his motion to vacate his sentence under 28 U.S.C. § 2255.  We previously

granted Faust leave to file a second or successive motion to vacate and remanded to the district court for an evidentiary hearing, because he made a *prima facie* showing that based on his newly discovered evidence, if proven, no reasonable jury would have found him guilty of his underlying criminal offense. On remand, the district court found that Faust failed to exercise due diligence in discovering his newly discovered evidence, and, alternatively, that the witness testimony he presented at the evidentiary hearing was not credible.

Faust's underlying conviction was for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). At trial, the government's evidence showed that police officers initially responded to a 911 call at Faust's home on Olive Avenue in West Palm Beach, Florida (the "Olive Avenue home"), and observed "suspicious behavior." They then searched the Olive Avenue home's trash and found 17 aluminum baking pans, a number of which bore scoring marks and contained a white powder residue that field-tested positive for cocaine. During the execution of the search warrant at the home, police found a bag of cocaine on top of a kitchen cabinet and arrested Faust. Police did not find cocaine on Faust's person, but at trial experts testified that Faust's fingerprint was found on one of the baking pans with the white powder residue and that the scoring marks on the baking pans were indicative of crack cocaine production. The government also

2

introduced under Federal Rule of Evidence 404(b) the testimony of a witness who had previously purchased crack cocaine from Faust.

In support of his motion to vacate, Faust submitted the declaration of Shontia Carnegie, who testified at the evidentiary hearing on remand that she and Robert Carroll lived with Faust and Faust's fiancée, Joy Wright, at the Olive Avenue home at the time of Faust's arrest.  The day before Faust's arrest, she saw Carroll with a bag of cocaine that he placed on top of the kitchen cabinet.  Wright did not tell Faust or anyone else that she had seen Carroll with this bag of cocaine until almost seven years later, when she ran into Wright and learned Faust had been arrested for cocaine possession.

"In a 28 U.S.C. § 2255 proceeding, we review a district court's legal conclusions *de novo* and factual findings for clear error."  *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008).  A determination of a witness's credibility is a factual finding that we review for clear error.  *See United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003).

Under the clear error standard, we "must affirm the district court unless review of the entire record leaves us with the definite and firm conviction that a mistake has been committed."  *Id.* (quotations omitted).  We allot "substantial deference to the factfinder, in this case, the district court, in reaching credibility determinations with respect to witness testimony."  *Id.* (quotation omitted).  We

3

will not reverse the district court's plausible fact findings even if we would have decided the case differently. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quotations omitted).

We may authorize the filing of a second or successive motion to vacate if the movant makes a prima facie showing that his application satisfies the requirements of 28 U.S.C. § 2255(h). 28 U.S.C. § 2244(b)(3)(C); *see In re Moss*, 703 F.3d 1301, 1302 (11th Cir. 2013). Under § 2255(h), a second or successive motion must be certified to contain:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). Where we make the limited determination that the movant has made a *prima facie* showing that his application satisfies § 2255(h), the proper procedure is to remand the case to the district court for a *de novo* decision on the § 2255(h) issues. *See Moss*, 703 F.3d at 1303. Only if the district court then concludes that the movant "has established the statutory requirements for filing a second or successive motion" should it "proceed to consider the merits of the motion, along with any defenses and arguments the respondent may raise." *Id.*

4

A *state* prisoner applying for collateral relief based on newly discovered evidence is required to demonstrate that (1) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and (2) "the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B). However, § 2255(h), applicable to *federal* prisoners applying for collateral relief, does not contain a due diligence requirement. *See id.* § 2255(h). We have not held that a federal prisoner must show due diligence in discovering the factual predicate for his claim.

To succeed on a claim of actual innocence based on newly discovered evidence, the movant must first, as a threshold determination, "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995) (citing to and discussing *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (stating that, pursuant to the fundamental miscarriage of justice exception to procedural default doctrine, a federal habeas court may grant writ without a showing of cause and prejudice if "a constitutional violation has probably resulted in the conviction of one who is

actually innocent")).  The reviewing court must make this determination "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 328, 115 S.Ct. at 867 (quotations omitted).  The movant does not meet the threshold requirement necessary to have his case considered on the merits "unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329, 115 S.Ct. at 868.  In such a case, "the habeas court may have to make some credibility assessments." *Id.* at 330, 115 S.Ct. at 868.  "[T]he court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id.* at 332, 115 S.Ct. at 869.

A conviction for possession with intent to distribute a controlled substance requires the government to prove the following three elements: "(1) knowledge (of one's possession); (2) possession of a controlled substance; and (3) intent to distribute that substance." *United States v. Woodard*, 531 F.3d 1352, 1360 (11th Cir. 2008).  "These elements may be proven by circumstantial evidence," and "[p]ossession may be actual or constructive, joint or sole. . . .  A defendant's constructive possession of a substance can be proven by a showing of ownership or

dominion and control over the drugs or over the premises on which the drugs are concealed." *Id.* (quotations and citations omitted).

As a preliminary matter, the district court erred in denying Faust's motion to vacate on the basis that he failed to exercise due diligence. Faust filed his motion as a federal prisoner under § 2255, which does not require, as a threshold matter, a showing of due diligence. *See* 28 U.S.C. §§ 2244(b)(3)(C), 2255(h). Thus, as the government concedes on appeal, the district court erred in applying the § 2244(b)(2)(B) standard for claims based on newly discovered evidence applicable to state prisoners. *See* 28 U.S.C. § 2244(b)(2)(B). Because the due diligence standard does not apply to federal prisoners, we need not address whether the district court's factual finding regarding diligence is clearly erroneous.

However, the district court did not clearly err in finding that Carnegie's testimony was not credible, and that Faust thus failed to show that no reasonable juror would have convicted him in light of this newly discovered evidence. As we noted in holding that Faust had established a *prima facie* case, if believed, Carnegie's testimony was sufficient to show that no reasonable juror would have convicted Faust of possession with intent to distribute cocaine, because his conviction was based on the cocaine that Carnegie alleges belonged exclusively to Carroll. However, the district court held an evidentiary hearing and properly

7

conducted a *de novo* review of the evidence in support of Faust's claim. This process necessitated making credibility determinations, and the district court adopted the magistrate judge's finding, made after viewing Carnegie's testimony firsthand, that her statements were not credible. *See Schlup*, 513 U.S. at 330, 115 S.Ct. at 867. Faust has failed to show that this finding was clearly erroneous.

According to her declaration and testimony, Carnegie did not determine the basis of the charges against Faust until speaking with Wright years after his arrest, conviction, and subsequent incarceration, in spite of the fact that she viewed Faust as a father figure and she knew that he would not have approved of any drugs being present in the Olive Avenue home. She never inquired about the reason for Faust's arrest, even though it was shortly after she saw Carroll with cocaine in the home. She never spoke with Wright, Carroll, or anyone else about Faust's arrest in any substantial way, even though she lived with Carroll for a brief time after the arrest and stayed with Wright, Faust's fiancée, for months at both the Olive Avenue home and another location. Although Carnegie testified that she and Carroll lived at the Olive Avenue home with Wright and Faust, when police responded to the 911 call Wright told the officers that the only people there were her, Faust, and their children, and at no time during the investigation did the lead investigating officer learn of or hear about Carnegie. In addition, Carnegie's professed reasons for staying silent about Carroll's drug dealing—her fear of

8

Carroll and her belief that Faust would force her to leave the home if he found out she was even aware of drug activity—were rendered moot when Faust was arrested, Carroll moved out, and Carnegie moved with Wright to another location. Despite this, she did not relay this information to Faust or anyone else until years later, and even then she only did so at the urging and with the help of Faust and his new fiancée. *See Schlup*, 513 U.S. at 332, 115 S.Ct. at 869 (holding that a district court may consider how the timing of a witness's submission and the likely credibility of the witness bears on the reliability of their testimony). Finally, Carnegie initially claimed that she had typed up the declaration herself, but when pressed she admitted that Faust had typed it up for her.

Although Carnegie's testimony on its face was not inherently implausible or incredible, the magistrate judge had the opportunity to observe Carnegie's testimony firsthand and to witness her demeanor on the stand. We allot substantial deference to the factfinder's credibility determinations, and we will not substitute our judgment for that of the district court simply because we might have decided the case differently. *See McPhee*, 336 F.3d at 1275. Here, where there are two permissible interpretations of the evidence and Faust cannot point to anything in the record demonstrating that the credibility determination was clearly erroneous, the district court's credibility determination as to Carnegie cannot be clear error. *See id.*

In light of this determination, the district court did not err in finding that, viewing the evidence on the whole, Faust failed to show that no reasonable juror would have found him guilty. Given the finding that Carnegie's testimony was incredible, the district court was entitled to give little weight to her testimony. The only other new evidence presented at the evidentiary hearing was the testimony of Rashid Harris, who stated that he bought drugs and guns from Carroll but never from Faust. Harris testified that he had lied and told the government that he bought drugs and guns from Faust in order to receive a better plea deal. Even if true, Harris's testimony would not have swayed a reasonable factfinder because his testimony does not checkmate the government's proof on any element of Faust's offense and only provides a small amount of circumstantial support for the defense.

On the other hand, the evidence at trial provided ample support for Faust's conviction. The evidence showed that Faust was frequently at the Olive Avenue home: Wright, who refused to let police enter the home when they responded to a 911 call, told police that Faust lived there with her and their children, and he was seen there by police on two occasions prior to being arrested. Police found 17 aluminum baking dishes, a number of which field-tested positive for cocaine and bore markings indicative of crack cocaine production, in the Olive Avenue home's trash. Forensic analysis identified Faust's fingerprint on one of the baking dishes that tested positive for cocaine. When police arrested Faust at the Olive Avenue

10

home and found the bag of cocaine, he had $745, mostly in small bills, on his person.  And at trial, for the purpose of showing Faust's intent to distribute, a witness testified that he had trafficked cocaine with Faust in the past and had observed Faust cooking crack cocaine.  Considering the whole of the newly-supplemented record on appeal, and in light of the credibility finding as to Carnegie's testimony, the district court did not err in finding that Faust failed to show that no reasonable juror would have found him guilty of possession of cocaine with intent to distribute.  *See* 28 U.S.C. § 2255(h); *Schlup*, 513 U.S. at 328, 115 S.Ct. at 867.  Accordingly, we affirm.

**AFFIRMED.**