**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 13-1291

DAVID JORDAN,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Selya, Circuit Judge,
Souter,* Associate Justice,
and Lipez, Circuit Judge.

David J. Nathanson, with whom Dan Horowitz and Wood &
Nathanson, LLP were on brief, for appellant.
Randall E. Kromm, Assistant U.S. Attorney, with whom Carmen
M. Ortiz, U.S. Attorney, was on brief, for appellee.

---

\* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

July 14, 2015

**SOUTER**, **Associate Justice**.    This is our second consideration of David Jordan's appeal from the denial of relief on federal habeas.   The first time, we remanded for a new evidentiary hearing, after which the district court again held against Jordan.  We affirm.

## I.

Jordan was tried and convicted of federal crimes in a joint trial with Anthony Bucci.   The defendants later filed unsuccessful habeas petitions under 28 U.S.C. § 2255, each contending (in principal part) that his Sixth Amendment right to a public trial was violated by a partial courtroom closure during voir dire proceedings.   Although on appeal we agreed with the petitioners that "the courtroom closure here likely violated the Sixth Amendment," Bucci v. United States, 662 F.3d 18, 26 (1st Cir. 2011), we held that each had procedurally defaulted his claim by failing to raise it at trial, id. at 27-29 (Bucci); id. at 33-34 (Jordan).  We affirmed the district court's judgment in Bucci's case, owing to his failure to show the cause and prejudice necessary to overcome the procedural default.  Id. at 29-32.  As to Jordan, we expressed doubt that he could overcome the same default, id. at 33-34, but we nevertheless ordered a remand because the evidentiary hearing had not addressed his specific allegations for excusing his failure to make a timely objection, id. at 34-35.

On remand, the district court held a two-day hearing and made the following supportable findings of fact. On the day of the voir dire, the courtroom was opened around 9 a.m. and began to fill with family relations, members of the public, lawyers, the defendants, and courtroom staff. At some point, the principal attorneys (including Jordan's counsel) were handed a list of prospective jurors, which they promptly began to study. Somewhat later, after the jury venire arrived, the clerk realized that the courtroom was too small to hold everyone and asked all spectators to leave. After someone complained that family members had a right to be present, the clerk consulted with the judge, who let Bucci's mother and wife and Jordan's wife back into the courtroom. The venire then entered, the judge took the bench, and the jury was ultimately chosen.

The district court acknowledged that the evidence was ambiguous as to whether Jordan's counsel was actually conscious of the partial courtroom closure. Although it was undisputed that counsel was in the room at the time, and that the clerk audibly announced the partial closure from around the front of the section for public seating, Jordan's lawyer testified that he had no recollection one way or the other. Nevertheless, the district court concluded:

> That does not mean, however, that [Jordan's counsel] was unaware of it. On the contrary, I find that he was. Given what appears from

- 4 -

the evidentiary record to be an undisputed sequence of events, it is virtually inconceivable that any person present in the courtroom, as the lawyers and their clients were, would not have observed that at some point all the spectators in the gallery got up and left together and shortly thereafter the venire arrived and filled the gallery but for one bench. Even if he did not hear the clerk announce the clearing of the courtroom, an experienced trial attorney like [Jordan's counsel] would have understood that it was not just a curious coincidence that all the spectators exited at once and that shortly afterwards the gallery was filled with the venire.

## II.

As mentioned earlier, for Jordan to overcome the procedural default of his Sixth Amendment claim, he must demonstrate "cause" excusing the default and "actual prejudice" from the underlying error. United States v. Frady, 456 U.S. 152, 167-68 (1982). Such cause can be either of two sorts: "the factual or legal basis for a claim was not reasonably available to counsel" due to "some objective factor external to the defense," Murray v. Carrier, 477 U.S. 478, 488 (1986); or the default was attributable to constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), see Murray, 477 U.S. at 488-89. Jordan cannot show cause either way.[1]

The first is foreclosed by the district court's factual findings. The judge expressly found that Jordan's counsel was

---

[1] We therefore do not address "actual prejudice."

aware of the partial courtroom closure, and reasonably should have known of it, there being no impediment to awareness external to the defense.  Thus, the factual basis for the Sixth Amendment claim was reasonably available to Jordan's counsel.

To avoid this conclusion, Jordan challenges the district court's findings, but he cannot clear the hurdle of showing clear error, necessary to set them aside.  See United States v. Garcia-Hernandez, 659 F.3d 108, 111 (1st Cir. 2011).  The courtroom closure was not conducted in secret, and it was reasonable for the district court to conclude that "any person present in the courtroom," especially one with legal experience, would (or should) have sensed and observed the exodus and replacement of those in the public seating section.  While Jordan stresses evidence that the clerk stood at the edge of the bar section and the front of the public area of the courtroom, and argues that the need to study newly supplied background information about the venire was distracting, his argument falls short of showing clear error in the district court's conclusions.  See deBenedictis v. Brady-Zell (In re Brady-Zell), 756 F.3d 69, 72 (1st Cir. 2014) ("[W]here the facts can support two plausible but conflicting interpretations of a body of evidence, the factfinder's choice between them cannot be clearly erroneous.").  This is no less true here, where the district court's crucial finding is an inference about counsel's awareness on a point that he himself did not recall

(either way) at the evidentiary hearing. The deferential nature of clear error review means that "when the district court chooses to draw a reasonable (though not inevitable) inference from a particular combination of facts, that inference is entitled to respect." Garcia-Hernandez, 659 F.3d at 111 (internal quotation marks omitted).[2]

The second way Jordan might establish "cause" is foreclosed by our prior decision in Bucci. There, Bucci claimed cause based on his counsel's ineffective assistance for failing to object to the partial courtroom closure, which he was admittedly aware of. See Bucci, 662 F.3d at 29-31. We rejected the argument because "under the applicable objective standard [for attorney performance], competent counsel could have knowingly and reasonably declined to raise the constitutional issue in this case [of partial closure] because doing so would be a waste of the defense's time, energy, and resources." Id. at 31. Specifically, "competent defense counsel could have reasonably concluded that the presence of Bucci's family members sufficiently mitigated the risk of actual prejudice to Bucci to the point that . . . his

---

[2] Jordan argues that the government should be estopped from arguing that his trial counsel was aware of the courtroom closure, because it originally argued that his lawyer should not have known of the error. To the contrary, the government's prior position was merely an arguendo assumption at that stage of litigation. See Bucci, 662 F.3d at 33 ("The government so far has been willing to assume that Jordan's counsel was unaware of the closure.").

client's interests would be best served by moving the trial along and focusing on the immediate task of jury selection." Id. at 31-32. We see no reason for a different view here with respect to Jordan. During the partial closure, Jordan's wife was seated in the courtroom and counsel was studying the list of prospective jurors; counsel's choice to focus on that important task, in lieu of making an objection of arguably minimal value, was objectively reasonable for the reasons we gave in Bucci, 662 F.3d at 29-32.

In attempting to distinguish his case from Bucci's, Jordan points to testimony during the evidentiary hearing that his lawyer, unlike Bucci's, thought it valuable to have the public present. But it is settled law that the ineffectiveness enquiry applies an "objective standard of reasonableness," not a subjective one, Strickland, 466 U.S. at 688, with the consequence that nothing turns on the general views of Jordan's lawyer. While Jordan alternatively frames the argument as his counsel's objective failure to "implement his own chosen strategy" to include all of the public, the testimony Jordan relies on demonstrates only that his attorney had a preference for the public's presence, not a proper "strategy." Reasonable judgment may forsake a preference in order to address a more pressing need, and a lawyer who understands that is not constitutionally ineffective.

## III.

The judgment of the district court is <u>affirmed</u>.